No. 18,610.

THE NATIONAL SUPPLY COMPANY, *Appellee,* V. THE
UNITED KANSAS PORTLAND CEMENT COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. SALE OF MACHINERY—*Delivery—Refusal to Accept—Liability
for Purchase Price.* Where machinery was purchased and
delivered to the buyer under an agreement that the seller
was to make plans for and supervise the installation of the
machinery, and the seller did make the plans and sent an
expert to superintend the installation of the machinery, but
the buyer, without valid excuse, refused to have the machinery
installed in his plant or to pay for the same, the seller, who
had substantially performed his part of the contract, is en-
titled to recover the agreed price of the machinery.

2. SAME. A party who has prevented the performance of a con-
dition of the contract by the other as to the incident of super-
vision can not take advantage of such nonperformance nor
escape liability for the failure of the condition.

Appeal from Allen district court; OSCAR FOUST,
judge. Opinion filed February 7, 1914. Affirmed.

*Altes H. Campbell,* and *John F. Goshorn,* both of
Iola, for the appellant.

*R. H. Bennett,* and *R. E. Cullison,* both of Iola, for
the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was begun by the
appellee, The National Supply Company, to recover
from the appellant, the United Kansas Portland Cement
Company, the sum of $947.50, the price of fuel-oil
appliances which it was conceded were ordered by the
appellant and furnished by the appellee, but for which
payment has not yet been made. The order for these
appliances was based on a verbal proposition previously
submitted by Mr. Billow, an officer of appellee. It was
claimed by appellee that under this proposition appel-

lant was to pay $1 per boiler horse power under builders' rating, which amounted to $920 for the fuel-oil appliances, and $27.50 for the tank-car connection, which was a hose for unloading oil; that appellee was to give the necessary supervision and instruction as to setting up the appliances; that these were promptly shipped to and received by appellant, and that plans and blue prints were prepared by appellee for constructing the plant and its experts sent to Iola to supervise its installation, but appellant declined to have the work done. The appellant admitted liability for $27.50, the price of the oil-unloading hose, but denied liability to pay $920 for the remainder of the plant, alleging that they were ordered subject to its approval and its option to accept and use them. It further alleged that the equipment was not satisfactory and that it decided not to install them and notified appellee that the appliances were held subject to its order. Testimony was offered by appellant tending to show that the order to purchase included expert supervision and instruction without additional charge to appellant, and that it had notified appellee of its desire to cancel the order for the appliances, and claimed a deduction for the services of experts in the installation of the plant. The jury found in favor of the appellee, and the court gave judgment in its favor for the purchase price of the appliances.

Complaint is made of the charge given to the jury, and, first, of some general instructions as to the binding effect of a contract between parties and the liability arising from its breach by one of them. These appear to be appropriate and free from error. The theories of each party, as gathered from the pleadings and evidence, were presented in the charge to the jury.

Special objection is made to an instruction with reference to a claimed deduction for the services of experts in installing the plant, which were not rendered, and in which the jury were told that if they found "that such failure to install plant and instruct

employees of defendant in the use of same was occasioned by the countermanding of the order by defendant which was acquiesced in by plaintiff," then it would be their duty to find the reasonable value of the experts' services and deduct the same from the price of the appliances. Attention is particularly called to the qualification making the acquiescence of the appellee necessary to a countermanding of the order. No material error was committed in the instruction. From the appellant's own testimony it appears that the order for appliances was given and that they were delivered in accordance with the order. The superintendent of appellant gave his testimony, but made no claim that appellant was at liberty to accept or reject the appliances at its option. There was some dispute in regard to the agreement as to the expert supervision of the installation of the plant, but none as to the other conditions of the contract. The action was brought on the contract, which appellee had subsequently performed. The appellant was not at liberty to countermand the order after it had been filled nor to change or cancel the contract without the acquiescence or consent of the appellee. There was no complaint that the appliances delivered did not come up to the requirements of the contract, but the superintendent of appellant gave as an excuse for failure of appellant to install and pay that conditions had arisen since the purchase was made which rendered the installation of the equipment of no advantage to appellant, and he had therefore asked the appellee to take it back and use it elsewhere. The order had then been filled, the contract substantially executed, and the title to the appliances transferred. Appellant had no ground for rescission of the contract nor any right to repudiate its obligations. As there was no right to cancel or change the contract there is little ground to complain of the statement that it could not be done without the

acquiescence of appellee. It is true that appellee did not supervise the installation of the plant, but that was not its fault. It did furnish the plans and blue prints, and went to the trouble and expense of sending two of its experts to Iola to perform that service. By refusing to have the purchased appliances set up the appellant made it impossible for appellee to perform that condition. It has been said:

"A party to a contract who prevents the performance of any condition, can neither claim benefit nor escape liability from the failure of such condition." (*Mill v. Pope,* 29 Kan. 289, syl. ¶ 2.)

It appears that the supervision was only an incident of the sale, and as it was performed so far as it was possible by appellee, the appellant, which prevented performance, can not take advantage of nonperformance. Aside from that, the appellant, in one paragraph of its answer, alleged that the service of expert supervision of the equipment by appellee was to be paid for by appellant. According to the testimony of appellee, which was evidently accepted by the jury, the agreed price of the fuel-oil appliances, outside of the hose, was $1 per boiler horse power, a computation of which made it amount to $920, and that was the award of the jury for that part of the equipment. The admissions made by the officers and agents of appellant and the letters written by its treasurer tended strongly to support the claims of appellee and the finding of the jury.

In view of the developments in the trial of the case the objections to rulings in the admission of testimony are not deemed to be substantial.

The judgment is affirmed.