## STATE OF KANSAS.

## JANUARY TERM, 1915.

PRESENT:

Hon. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. SILAS W. PORTER,
Hon. JUDSON S. WEST, } JUSTICES.
Hon. JOHN MARSHALL,
Hon. JOHN S. DAWSON,

---

No. 19,168.

J. M. KAUL et al., *Appellees*, v. THE AMERICAN INDE-PENDENT TELEPHONE COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. WRITTEN CONTRACT—*Incomplete—Parol Evidence to Supplement Admissible.* A written contract for the performance of certain services and conditions which contained no provision as to the duration of the contract relation or the time within which the services and conditions were to be performed is manifestly incomplete, and parol evidence to supplement and explain the written provisions is admissible.

2. CONTRACTS—*Not Abrogated by Public Utilities Act of 1911—Nor by Filing Schedule of Rates with Utilities Commission.* The mere enactment of the public utilities statute (Laws 1911, ch. 238) did not abrogate agreements as to telephone service, rates and tolls, and the publishing and filing of a schedule of rates with the public utilities commission did not, of itself, operate to annul such agreements.

Appeal from Jackson district court; OSCAR RAINES, judge. Opinion filed April 10, 1915. Affirmed.

*Charles Hayden,* of Holton, for the appellant.
*E. R. Sloan,* and *Guy L. Hursh,* both of Holton, for the appellees.

1—95 KAN.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a suit begun by the plaintiffs to enjoin defendant from a threatened disconnection of plaintiffs' telephone line with defendant's exchange at Holton and from the refusal of certain rates and privileges stipulated in an agreement previously made. It appears that on February 5, 1903, plaintiffs, individually and as an unincorporated association of farmers known as The Bills Creek Telephone Company, having for its object the maintenance of a local telephone line, and defendant The American Independent Telephone Company agreed, substantially:

"That said first party (The American Independent Telephone Company) agrees to meet and connect with line of second party (The Bills Creek Telephone Company) at the city limits of Holton, Kansas, for which privileges second party agrees to pay first party the sum of $27.00, second party to build and equip said line outside city limits, furnish their own phones and care for the same at their own expense and keep the same in good repair, said phones to be acceptable to first party, first party to have all tolls collected over said line both ways. Second party to have free privileges in Holton exchange and all farm lines in Jackson county, Kansas, and a 15c rate over all toll lines in said Jackson county."

Plaintiffs alleged that although this contract had not been abrogated the defendant threatened to discontinue the service provided for therein, that such denial of service would work great and irreparable injury and damage to them, and they therefore asked for a temporary injunction and that it be made permanent on final hearing. The temporary order was granted, and defendant in its answer denied the making of the contract relied upon by plaintiffs, and alleged that if made it was *ultra vires,* and, further, that it was impossible for it to furnish the service on the terms specified in the writing and if furnished it would be a discrimination against other users of its telephone lines. On the trial of the case evidence was offered tending to show

Kaul v. Telephone Co.

that parties making the contract intended that it should remain in force as long as the defendant continued in business. The temporary injunction was made permanent against the defendant, and its motion for a new trial being overruled it now appeals.

The first error assigned is that testimony of a contemporaneous oral agreement which varied and contradicted the written contract was received. The written contract, as will be observed, did not give the duration of the contract relation between the parties. To show the time within which the respective undertakings of the parties was to be performed, testimony was offered and received to the effect that the contract relation was to continue and bind the parties as long as the defendant was engaged in business. As the written contract omitted the time of performance or duration, it was manifestly incomplete. In cases where a written contract does not embrace the entire agreement of the parties, and thus their intentions are not completely expressed, parol proof may be received to supplement and explain that which is written. (*Shepard v. Haas,* 14 Kan. 443; *Evans v. McElfresh,* 85 Kan. 389, 116 Pac. 612; *Ingram v. Dailey,* 123 Iowa, 188, 98 N. W. 627.)

The contention that the contract is lacking in mutuality can not be sustained. The agreements entered into by the parties are concurrent and obligatory on both. Each is bound to carry out the stipulated undertakings during the existence of the contract, and if the plaintiffs had undertaken to disconnect their lines from the exchange of the defendant and to connect with another the defendant would have been entitled to the remedy of injunction.

It is argued that the contract is not enforceable, because of the provisions of the public utilities act recently enacted. (Laws 1911, ch. 238.) Some testimony was introduced to the effect that the contract rates are unreasonable and lower than the defendant is charging other patrons, and also that the defendant has published and filed with the public utilities commission a

schedule of its rates, tolls, fares and charges.   The contract in question was made long before the act referred to was passed, and was in force when the public utilities commission came into existence, and while that commission is vested with broad regulatory powers it is not shown nor claimed that it has found the contract rates to be unreasonable.   Granting, without deciding, that the commission has the power under the law to determine whether or not the rates prescribed by the contract are reasonable and valid, and to revise them if found to be unreasonable, it does not appear that it has exercised the power, nor that they have been presented to it for its consideration.   The passage of the act did not automatically overthrow contracts, nor set aside schedules of rates which had been agreed upon. Neither did the fact that the defendant published and filed a schedule of rates with the public utilities commission abrogate the contract.   In any event, rates previously agreed upon between utilities and patrons will continue in force until the commission has found them to be unreasonable, and has prescribed other rates.   The passage of the act did not take from the court the power and duty to prevent the interruption of the service at the rates agreed upon, or otherwise fixed, until action had been taken by the commission. Without determining the extent of the powers of the commission to regulate rates previously fixed by contract, nothing appears here to show that the judgment of the court in enjoining the defendant from disconnecting the lines of the plaintiffs from its exchange, or from refusing the continuance of the service which had been given under the contract since 1903, was unlawful.

The judgment is affirmed.