No. 42,686

Leon F. Hummel and Alice I. Hummel, *Appellants,* v. Wichita Federal Savings and Loan Association, a Corporation, *Appellee.*

(372 P. 2d 67)

Opinion filed June 9, 1962.

*Thad Hanna,* of Wichita, argued the cause, and *John Callahan,* of Wichita, was with him on the brief for the appellants.

*William C. Farmer,* of Wichita, argued the cause, and *Paul V. Smith, Douglas E. Shay, Leo R. Wetta, James R. Schaefer* and *A. J. Focht,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: This is an action by mortgagor homeowners against a savings and loan association to recover the amount of mechanics' liens filed against their property—and for other items. The action is based upon a breach of an oral contract.

Plaintiffs appeal from an order sustaining a demurrer to their amended petition.

The story of what happened in this case, as told by the amended petition and written exhibits attached thereto, is substantially as follows:

Plaintiffs Hummel are husband and wife and live in Wichita. He is a civil engineer for the state highway commission and she is a school teacher. They desired to have a new house and on October 5, 1959, entered into contracts with the Gillespie Construction Company of Wichita, whereby they purchased a lot from Gillespie and upon which he agreed to construct for them a house according to specifications. The consideration involved was $18,000, a part of which was to be paid by plaintiffs from the proceeds of a conventional loan. Paragraph 7 of the construction agreement pro-

vided that Gillespie was to promptly pay all bills for material and labor furnished in the construction of the house, and that he would deliver the house and premises to plaintiffs free and clear of any and all mechanics' and materialmen's liens.

Three days later, on October 8, 1959, plaintiffs went to the defendant savings and loan association to see about a loan. They were interviewed by a Mr. Fager, an agent and employee of defendant. Gillespie also was present. Fager explained to plaintiffs the papers necessary to be signed, which included a note and mortgage and a written authority from plaintiffs to defendant to pay Gillespie as he progressed with the construction of the house. Fager stated to them that the loan costs would run between $300 and $400, and in the course of this explanation mentioned an item for attorney fees and advised plaintiffs that such fees would be approximately $90. Plaintiffs told Fager that they wanted to get their own attorney "to check everything out." Fager made no objection to this suggestion but told them that no one getting a loan such as this ever got his own attorney and that plaintiffs would only be paying an attorney to duplicate the work that defendant's attorney would do, and that defendant's attorney would do everything that an attorney normally would do in such a transaction for plaintiffs before defendant ever paid any money over to Gillespie. Fager further assured plaintiffs that defendant had already "checked everything out" on the property and on Gillespie; that everything was "all right and everything had to be all right before defendant would pay out any money."

Pursuant to this conversation, plaintiffs on that date, October 8, 1959, signed an application for a mortgage loan in the amount of $13,200. The application included an authorization by plaintiffs to defendant to disburse all available funds for the purpose of eliminating prior liens.

About a month later, on November 6, 1959, plaintiffs executed to defendant their note and mortgage in the amount of $13,200, and a written statement in the form of a letter in which they authorized defendant "to issue all inspection checks on the property legally described as follows: . . . to Hugh Gillespie, Builder."

The note and mortgage and the authorization to defendant to disburse the mortgage-loan proceeds to Gillespie, after inspection checks, were executed by plaintiffs at the request and direction of defendant, with the oral understanding and agreement with defendant that defendant would disburse the mortgage-loan proceeds

to Gillespie only if it was safe to do so, considering both the interest of plaintiffs and defendant, the consideration for such oral agreement being the payment of loan costs by plaintiffs to defendant and the repayment of the principal amount of the loan plus interest. During the course of construction of the house defendant disbursed to Gillespie mortgage-loan proceeds in the amount of $11,660.

On numerous occasions between October 8, 1959, and February 3, 1960, plaintiffs conversed by telephone with Fager concerning the construction work being performed by Gillespie and were assured by Fager that "everything was all right"; that Gillespie was a good workman, had good credit, always paid his bills, lived up to his word, and that plaintiffs had "nothing to worry about." On the last-above date mentioned, February 3, 1960, plaintiffs went to defendant institution and were again assured by Fager that "everything is in good shape," and the execution of closing papers was discussed. Fager again stated that Gillespie had a very good credit rating; that defendant had inquired in writing of every business concern with which Gillespie had dealings and that all responses thereto showed excellent credit for Gillespie, and that defendant had received no unfavorable credit reports on him. In complete reliance on Fager's statements and assurances, plaintiffs, on that date, signed closing papers presented to them by Fager. An item for attorney fee in the amount of $25, and an item for "initial service charge" in the amount of $330, were among the items listed in the loan-settlement statement. Total deductions made by defendant for loan expenses amounted to $942.88, and this document also showed disbursements by defendant to Gillespie on November 23, 1959, December 7, 1959, January 12, 1960, and February 2, 1960. In connection with the closing papers, plaintiffs on this date, February 3, 1960, signed a statement whereby they agreed to the correctness of the loan-settlement statement, and authorized and ratified the disbursements of the funds as therein stated.

Thinking that all was well and good, plaintiffs moved into their new home on February 13, 1960, believing that all bills for labor and material had been paid by Gillespie out of the funds disbursed to him by defendant. At no time had they been advised by defendant as to what steps they might have taken to protect themselves against liens on their property, and at all times relied upon defendant to take such precautions on their behalf as their agent. Commencing with February 20, 1960, mechanics' liens aggregating

$9,844.04 were filed against their property, notwithstanding the fact that on February 3, 1960, they had received from Gillespie his "builder's affidavit" stating that all charges and costs for labor and material had been fully paid and that the premises were free and clear of all lienable claims arising out of and by virtue of the construction of the house.

The amended petition further alleges that defendant knew, or, with the exercise of reasonable diligence, should have known that Gillespie had not paid all bills for labor and material that went into the construction of the house, and that defendant disbursed the mortgage-loan proceeds without regard to the interest of plaintiffs and to their detriment. By reason of the breach of the oral contract and agreement by defendant, plaintiffs suffered damage, and recovery is sought in the aggregate amount of the mechanics' liens, $9,844.04, for other items not here material, and for the sum of $5,271.02 which represented the equity owned by plaintiffs in the residential property traded in by them to Gillespie as a part of the purchase price of the house here in question, such property formerly owned by them now being in the process of foreclosure because of nonpayment of the mortgage thereon assumed by Gillespie in that transaction.

To this amended petition defendant savings and loan association filed a demurrer on the ground that it did not set forth sufficient facts upon which a recovery can be based on behalf of plaintiffs.

This demurrer was sustained, and from that ruling plaintiffs have appealed.

In support of the trial court's ruling defendant contends that the various loan papers and instruments attached as exhibits to the amended petition must be read and construed together as one written agreement (*Skinner v. Skinner*, 126 Kan. 601, 270 Pac. 594); that the oral agreement made by the parties—if in fact one was made—became merged into the single written agreement and the terms of such written agreement determine the rights of the parties (*McKay v. Clark*, 162 Kan. 653, 178 P. 2d 679), and that under the elementary and universal rule parol evidence is not admissible to vary or contradict the terms of a complete and unambiguous written agreement (*Cherry v. Joyce*, 168 Kan. 475, 213 P. 2d 1010.)

In this connection it is argued that the supposed oral agreement between the parties was to the effect that periodic disbursements of the loan proceeds would be made to Gillespie only if it was safe

to do so, considering the interest of both plaintiffs and defendant, and that such alleged oral agreement is nowhere contained in the written agreement and therefore is at variance with such written agreement. It is further argued that taken at its face value the alleged oral agreement would place the defendant in the status of a guarantor or an insurer with respect to Gillespie paying all of his bills, and that the written agreement between the parties imposed no such duty on defendant.

It also is contended that as the amended petition fails to allege fraud, ambiguity, mistake or false representation, plaintiffs are precluded from offering evidence of the alleged oral agreement (*Hazelton v. Chaffin,* 109 Kan. 175, 197 Pac. 870; *Grace v. Martin,* 182 Kan. 33, 318 P. 2d 1007), and that in any event the amended petition does not establish any consideration for the oral agreement, if in fact one was made, and that in order to be enforceable a subsequent oral agreement purporting to change, alter or contradict a prior written agreement on the same subject must be supported by a fresh and independent consideration. (*Frogge v. Belford,* 168 Kan. 74, 211 P. 2d 49.)

As abstract principles of law the correctness of the foregoing rules must of course be conceded. Neither of the parties has cited any decision factually analogous to the case before us, but in *Mayse v. Grieves,* 130 Kan. 96, 285 Pac. 630, after discussing the force and effect of the parol-evidence rule, it was said:

". . . but there is a wide distinction between an attempt to contradict the terms of a written instrument and to explain the circumstances and conditions under which it was executed and delivered. It has regularly been held that where a contract is incomplete or silent in any particular, parol evidence is admissible to show the actual agreement between parties, and this is not limited to cases where there is ambiguity." (pp. 99 and 100.)

In *Kirk v. First National Bank,* 132 Kan. 404, 295 Pac. 703, it was held:

"When a written contract is silent on some essential point agreed to by the parties, parol evidence to establish that point is not inadmissible on the ground that it tends to vary the written contract." (syl. 1.)

and in the course of the opinion it was said:

"It is well established that when a written contract is silent as to a particular matter discussed and agreed upon between the parties, parol evidence may be offered on that matter without varying the written contract." (p. 407.)

In *Handrub v. Griffin,* 127 Kan. 732, 275 Pac. 196, it was held:

"The rule against the admission of parol evidence to contradict, alter or vary the terms of written instruments is not violated when such evidence does not

contradict, but explains or supplements, indefinite or incomplete matters contained in the instruments, *or when it tends to show the relation of the parties and the circumstances under which the instruments were executed.*" (syl. 2.) (Our emphasis.)

We are told that the basis of the ruling sustaining defendant's demurrer to the amended petition was that in view of the written agreement between the parties the parol-evidence rule precluded plaintiffs from introducing evidence of the alleged oral agreement.

We believe, however, that the facts here pleaded present a situation different than the usual and ordinary case in which the parol-evidence rule is to be invoked.

The whole trouble giving rise to this lawsuit is that Gillespie did not pay for labor and materials going into the construction of the house—despite the fact that as construction progressed defendant made periodic disbursements to him out of plaintiffs' loan proceeds—all of which resulted in the filing of the liens against their property. The various loan papers contained no provision obligating defendant to require Gillespie to furnish receipts showing payment of labor and material bills before making the periodic disbursements to him, and there is nothing in any of the documents which purports to set out, define or limit what defendant was to do with respect to the matter. They are silent on the subject.

The facts as pleaded clearly show that plaintiffs, who are laymen, were sort of "apprehensive" throughout the entire series of transactions. They thought perhaps they should employ an attorney "to check things out." They were assured by defendant that that would merely be a duplication and needless expense. They were assured by defendant that Gillespie "was reliable and all right, and that everything had been taken care of." Those assurances continued clear up to the date of final closing papers. Giving the allegations of the amended petition the benefit of all favorable inferences, as must be done when attacked by demurrer, those oral assurances, as a practical matter under the circumstances, have a common everyday meaning and can be construed to mean only one thing—that insofar as the disbursements to Gillespie were concerned "everything was all right and had been taken care of" by defendant—and that the extent of plaintiffs' liability would be the note and mortgage they had executed to defendant.

May it be said that under the situation presented—the alleged oral agreement in the nature of assurances that "everything is all

right and taken care of"—varies or in any way contradicts the written agreement? We think not.

The written agreement is silent as to whose duty it was to check on whether Gillespie had paid his labor and material bills, and it is to that proposition the alleged oral agreement is directed. Under well-established rules oral evidence is admissible to show the relation of the parties and to explain the circumstances under which a written agreement was executed and delivered. All of the dealings —both oral and written—were, under the circumstances, but one transaction and founded upon one consideration. In our opinion the demurrer to the amended petition was erroneously sustained and the judgment is therefore reversed.