No. 42,917

W. E. SOUDER, *Appellant*, v. TRI-COUNTY REFRIGERATION CO., INC., A. W. TORLUEMKE, and P. B. LINDSAY, *Appellees*.

(373 P. 2d 155)

Opinion filed July 7, 1962.

*Joseph W. Menzie,* of Manhattan, and *Fred R. Vieux,* of Augusta, argued the cause, and *Donn J. Everett,* of Manhattan, was with them on the briefs for the appellant.

*Charles D. Green,* of Manhattan, argued the cause, and *Richard C. Wells* and *Charles S. Arthur,* also of Manhattan, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action for specific performance of a contract. The pertinent facts follow.

Defendants (appellees) A. W. Torluemke and P. B. Lindsay, owners of all of the stock of the defendant corporation, Tri-County Refrigeration Co., Inc., had an opportunity to dispose of the assets of their corporation. Through some previous arrangement between Lindsay and W. E. Souder, plaintiff (appellant), Souder, in the event of sale of the assets of the corporation, was to be given the first opportunity to purchase. On June 30, 1961, Lindsay contacted Souder in order to give him the first opportunity to purchase the stock of the corporation. Souder was advised by Lindsay that he

and Torluemke had an offer to sell the corporation for $115,000 but because of their past association Souder would be permitted to purchase all of the stock of the corporation for $100,000.

A meeting was arranged, and on July 1, 1961, all the parties being present, discussion arose with reference to giving Souder time to raise the purchase price. It was first discussed that Souder would be given an option to buy the stock on or before July 15. Souder asked for more time in order to raise the money through Cities Service Oil Company. Negotiations were completed and a written offer was submitted to Souder whereby he was given an option to purchase all of the capital stock of the corporation for the sum of $100,000, said option to be exercised on or before July 20. The written offer read:

"July 1, 1961
"Dear Mr. Souder:

"I am writing this letter as Secretary of the Tri-County Refr. Co., Inc., Manhattan, Kansas, and at the direction of the President of that Company.

"Please be advised that the Tri-County Refrigeration Co., Inc., Manhattan, Kansas, has a firm offer to sell their present business here in Manhattan, Kansas, including all property owned by them free and clear of any and all indebtedness for the sum of $115,000.00 from a Major Oil Company with the exception of their Accounts Receivable and the Fertilizer business. The Tri-County Refrigeration Co., Inc., must accept or reject this offer within a reasonable time; however I am giving you the opportunity to purchase all of the Capital stock of the Corporation for $100,000.00.

"I must have your acceptance or refusal to purchase this Capital stock on or before July 20, 1961.

"Yours truly,
"/s/ Richard C. Wells
"Secretary"

and on this same date Souder acknowledged receipt of the offer and its terms by the following endorsement on the letter:

"I, W. E. Souder, agree to the above foregoing letter and if I do not purchase the stock as above set out, I hereby release and waive any rights to purchase the stock in the future.

"/s/ W. E. Souder
"Dated July 1, 1961, Manhattan, Kansas."

The record disclosed that defendants Torluemke and Lindsay testified over objection of the plaintiff that contemporaneously with the delivery of the option and plaintiff's acceptance thereto the entire $100,000 was to be paid on or before July 20, and was so understood by all the parties. They further testified Souder stated

this would give him time to obtain the money and get it paid in. Souder's testimony was:

"Q. How did you arrive at the date of July 20 which was inserted in the option agreement?

"A. Well, there was two reasons for that: number one, was to be sure that I had the money and, second, was that I figured by that time I would have ample time to see some of the records of that company."

The record further disclosed that several telephone conversations were had between Souder and representatives of Cities Service Oil Company in order to procure authorization to advance the $100,000 to Souder.

On the morning of July 20, Souder went to the office of his attorney, Joseph W. Menzie, in Manhattan for the purpose of exercising his option. While there, a telephone conversation occurred between a representative of Cities Service Oil Company and Souder and Menzie wherein the plaintiff was informed that $100,000 would be available and delivered to him in Manhattan by a representative of the company on two and one-half hours' notice. Thereafter, Mr. Menzie, as attorney for Souder, prepared and sent to the defendant company's representative the following notice of acceptance:

"You are hereby advised that I accept the above offer to purchase the capital stock of the Tri-County Refrigeration Co., Inc. as above set forth." [referring to Mr. Wells' letter of July 1]

"It will be appreciated if you would advise me when we may arrange to have a transfer of the stock and the payment for same which I am ready, willing and able to do at your direction.

"Dated at Manhattan, Kansas, this 20th day of July, 1961.

"/s/ W. E. Souder"

and the acceptance was duly acknowledged by the company's secretary on the letter as follows:

"The original of the foregoing notice of acceptance of offer was delivered to me this 20th day of July, 1961, at 10:45 a. m.

"/s/ Richard C. Wells

"Secretary, Tri-County Refrigeration Co., Inc.,

"Manhattan, Kansas."

After the foregoing notice of acceptance had been served on the corporation's representative Souder had a conversation with defendant Lindsay but did not advise Lindsay that the $100,000 would be available that day, nor did he tender or pay the purchase price under the terms of the contract. These facts are substantiated by

the following excerpt from the record of the cross-examination of Souder:

"Q. Did you tell him [Lindsay] at that time that you were in a position to pay the money on that date?

"A. I didn't even mention it; I didn't tell him.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Did you say anything about having the funds available in Kansas—from Kansas City and that they could be brought that day?

"A. No, not to my knowledge.

"Q. Did you tell any of the defendants on July 20 that you could have the money out there on the 20th—that day?

"A. No, not that I recall."

Souder also testified that he neither authorized his attorney nor anyone else on his behalf to accept delivery of the corporate stock.

Souder remained in Manhattan until about 2:00 p. m. and then returned to Augusta. He did not advise the defendants where he would be the remainder of the day, nor did he advise them that he was leaving Manhattan, and no further contact was made either by Souder or his attorney with the defendants on July 20, 1961.

At approximately 2:30 p. m. that same day the two defendants went to Menzie's office and attempted delivery of the stock to Menzie [Souder's attorney], but Menzie had left his office and was not available.

At no time did the plaintiff, or anyone acting as his agent, inform or advise the defendants that the $100,000 was available for payment on July 20. No tender or offer to make payment was made, and defendants had no knowledge of the plaintiff's capability in that regard.

The following day, July 21, Mr. Menzie and Mr. Wells engaged in a conversation in regard to the stock transaction, and Wells advised Menzie at that time that the sale would not be consummated inasmuch as it was the position of the defendants that the plaintiff had not performed by payment of the purchase price on July 20.

Among its findings of fact the trial court found that at the time of the delivery of defendants' option to Souder, and Souder's acceptance thereof on July 1, that it was agreed that the $100,000 purchase price specified in the option would be paid by July 20 if Souder decided to exercise the option; that plaintiff had made arrangements to obtain the $100,000 from Cities Service Oil Company and that a representative of that company was prepared to deliver the money to plaintiff in Manhattan on two and one-half hours' notice through-

out the entire day of July 20; that at no time did plaintiff, or anyone acting in his behalf, inform or advise defendants that said sum was available for payment, and that Souder did not at any time pay or tender to defendants payment for the stock; that defendants Torluemke and Lindsay were in Manhattan the entire day and stood ready to deliver the stock to Souder upon payment therefor; that Souder left the city of Manhattan for Augusta shortly after noon and did not return the remainder of that day. The court concluded as a matter of law that there was a contemporaneous collateral oral agreement between Souder and defendants wherein Souder was required to pay or tender the $100,000 purchase price for the stock to the defendants by July 20 if he elected to exercise the option. Inasmuch as the plaintiff failed to pay or tender the purchase price on July 20, plaintiff was not entitled to specific performance. The trial court entered judgment accordingly, and plaintiff appeals.

Defendants contend that there was a contemporaneous collateral oral agreement between the parties made on July 1, the day the option was delivered to plaintiff, whereby plaintiff was to pay the $100,000 to the defendants on or before July 20 for the 200 shares of capital stock in the event plaintiff exercised his option, and that said contemporaneous collateral oral agreement was never fulfilled by the plaintiff Souder by tendering or paying the purchase price.

Plaintiff Souder contends that evidence of the contemporaneous collateral oral agreement was not admissible in evidence as it violated the parol evidence rule, but that if such evidence was admissible, the defendants did not sustain the burden of proof.

From our review of the record we find there was ample evidence to sustain the contemporaneous collateral oral agreement made on July 1.

The determinative question presented by the plaintiff on appeal is that the evidence relating to the time when the $100,000 was to be paid, being a conversation had prior to or at the time of the execution of the option agreement of July 1 and Souder's acceptance thereof, tended to vary the terms of that contract and was a violation of the parol evidence rule and is not admissible to vary or contradict the terms of a complete or an unambiguous written agreement. This point is not well taken. Defendants were not attempting to vary the terms of the written instrument but only to explain or supplement the indefinite and incomplete matter contained in the contract. It is well established that when a written contract is

silent as to a particular matter discussed and agreed upon between the parties, parol evidence may be offered on that matter without varying the written contract. (*Hummel v. Wichita Federal Savings & Loan Ass'n*, 190 Kan. 43, 372 P. 2d 67; *Kirk v. First National Bank*, 132 Kan. 404, 407, 295 Pac. 703; *Kaul v. Telephone Co.*, 95 Kan. 1, 147 Pac. 1130.)

There is a wide distinction between an attempt to contradict the terms of a written instrument and to explain the circumstances and conditions under which it was executed and delivered. It has regularly been held that where a contract is incomplete or silent in any particular, parol evidence is admissible to show the actual agreement between the parties, and this is not limited to cases where there is ambiguity. Parties to a contract know best what was meant by its terms and are the least liable to be mistaken as to its intention, and, where the contract is silent or ambiguous concerning a vital point incident thereto, parol evidence will be received to aid in its construction. (*Mayse v. Grieves*, 130 Kan. 96, 99, 100, 285 Pac. 630; *Kirk v. First National Bank*, supra; *Hummel v. Wichita Federal Savings & Loan Ass'n*, supra.)

The rule against admission of parol evidence to contradict, alter or vary the terms of written instruments is not violated when such evidence does not contradict but explains or supplements indefinite or incomplete matters contained in the instruments, or when it tends to show the relation of the parties and the circumstances under which the instruments were executed. (*Handrub v. Griffin*, 127 Kan. 732, 275 Pac. 196; *Hummel v. Wichita Federal Savings & Loan Ass'n*, supra.) In cases where a written contract does not definitely embrace the entire agreement of the parties, and thus their interests are not completely expressed, parol proof may be received to supplement and explain that which is written. (*Kaul v. Telephone Co.*, supra.) Evidence of an omitted term has been received as to the time of payment of amounts due or to become due under a contract. (32 C. J. S., Evidence, § 1013, p. 1035.) An oral agreement as to the manner in which a contract is to be performed is competent where the writing is not contradicted thereby, such as a delay in paying the purchase price. (20 Am. Jur., Evidence, § 1140, p. 993.)

It is true that defendants had offered and agreed that plaintiff might have the privilege of purchasing the stock on or before July 20, and this agreement was binding upon defendants, that is, that

defendants were bound that the offer should be open and available to plaintiff to the end of that period. Plaintiff had the option to purchase, which he was at liberty to accept or not on or before the specified date, but the fact that the offer was made did not constitute a sale nor invest in plaintiff any title or interest in the stock. Until plaintiff had elected to accept the offer made by the defendants and had paid or tendered the purchase price within the stipulated time there was no sale and no compliance with the terms of the contract on plaintiff's part.

Plaintiff argues that the time of performance was not of the essence of the contract. It is true that it contained no statement to that effect; however, the option specifically provided that the defendants had another offer for the sale of the stock from a major oil company for a sum exceeding that which the plaintiff was to pay. It was apparent that defendants should set a deadline for plaintiff's performance of the contract so that in the event the plaintiff did not accept and pay for the stock within that time they would be at liberty to exercise the oil company's previous offer to purchase the stock. Defendants could not sit idly by and wait for plaintiff to pay the purchase price, thereby losing their opportunity to accept the previous offer of the sale of the stock.

We stated in *Kirk v. First National Bank*, supra, that although a written contract for the sale of property does not specifically state that time of performance is of the essence of the contract, it may become so from the nature of the property sold and the surrounding circumstances which induced the sale. The circumstances, as disclosed by the record, had the effect of making time of payment of the essence of the contract.

The written option and acceptance of July 1 was incomplete as to whether the $100,000 was to be paid on or before July 20, and it is to that proposition the alleged oral agreement was directed. Under well-established rules oral evidence is admissible to show the relation of the parties and to explain the circumstances under which a written agreement was executed and delivered. All of the dealings, both oral and written, were, under the circumstances, but one transaction and founded upon one consideration. The record in the instant case clearly reveals that there was a contemporaneous collateral oral agreement existing between the parties; that in the event that Souder exercised his option to buy he would buy the 200 shares of stock of the corporation and pay the

$100,000 on or before July 20.  There was ample evidence to sustain such contract.  It did not violate the parol evidence rule.  Plaintiff's failure to pay or tender payment constituted a failure on his part to comply with the terms of the contract, and he is not entitled to specific performance.

The judgment of the trial court is affirmed.

FATZER, J., dissents.

SCHROEDER, J., dissenting:  Upon all the facts, conditions and circumstances presented by the record in this case, the appellees, in my opinion, were estopped to assert that delivery of the $100,000 on the 20th day of July, 1961, was required to complete the consummation of a contract.  The record discloses a deliberate and calculated design by the appellees to mislead the appellant in order to defeat consummation of the contract on the 20th day of July, 1961, if at all possible, by giving the appellant the "run around."

Prior to July 1, 1961, Souder had been given an option contract to purchase all of the stock of the Tri-County Refrigeration Co., Inc.  On July 1, 1961, Lindsay invited Souder upon Souder's arrival in Manhattan, Kansas, to go with him to the office of Richard C. Wells.  (It was stipulated at a pretrial conference on the 25th day of October, 1961, that Richard C. Wells was attorney and agent for the appellees in the transaction here in question.  Wells also represented the appellees in the trial of this action as an attorney, and appears on the brief for the appellees in this court.)  It was in Wells' office that the option contract, dated July 1, 1961, was prepared and delivered to Souder.  It is therefore clear the appellant gave consideration for the written option contract signed by Wells and dated July 1, 1961.

An issue at the trial of this action was the existence of a contemporaneous oral agreement that the $100,000, specified for the purchase of all the capital stock of the corporation in question, would be paid on or before July 20, 1961, if Souder decided to exercise the option.  It was Souder's position at the trial of this matter that no such contemporaneous oral agreement was made. It was Souder's position that the law implies a reasonable time in such contract, where no definite time is indicated.  Nevertheless, the record does disclose that Souder was ready, in any event, to make full payment of the $100,000 on the 20th day of July, 1961.

Since the trial court found against Souder on the existence of a

contemporaneous oral agreement, it is necessary to disclose in some detail the activity and the statements of the parties and their attorneys regarding this transaction on both the 19th and 20th of July, 1961. The appellant's brief raises eight points but my remarks will be confined to his fifth point—whether an optionee is required upon *acceptance* of a written offer to forthwith pay the purchase price.

The evidence is uncontroverted that Lindsay was in the office of the finance manager for the Cities Service Oil Company in Kansas City on July 19, 1961, between 4:30 and 5:00 p.m. From that office he called Lindsay in Manhattan to inform him he was coming to Manhattan the next morning to accept his option and wanted to know if Lindsay wished any good faith money put up. Lindsay said he did not know, that he would have to call attorney Wells. About thirty minutes later Lindsay called Souder back, in Kansas City, and said he did not know because he could not find Wells.

On the morning of July 20, 1961, at about 8:00 a. m., Souder arrived in Manhattan and had a cup of coffee with Lindsay. He told Lindsay he was in Manhattan "to exercise his option." He asked when the stockholders could get together to make arrangements for completion of the contract. Lindsay told Souder "he did not know where the other stockholder [Torluemke] was and he was not sure when they could get together."

Souder then went to the office of Joseph W. Menzie, an attorney of Manhattan. Menzie called Lindsay and told him that Souder was there to exercise his option, and Lindsay told Menzie he would have to contact Wells; *"Wells was handling everything."* (Emphasis added.)

At this point it must be noted the attorneys, Menzie and Wells, were in charge of the transaction for the parties and that this was during the early business hours of July 20, 1961.

When Souder arrived in Menzie's office he told Menzie that he was expecting a telephone call about 9:30 a. m. to advise Menzie as to the availability of the $100,000. The record discloses Menzie received the call from Cities Service Oil Company wherein Souder and Menzie were informed that the $100,000 would be available and delivered to Souder in Manhattan by a representative of the company on two and one-half hours' notice. Menzie thereupon, as counsel for Souder, prepared the *written acceptance of the option contract.* This acceptance set forth *in full the letter of Wells dated*

*July 1, 1961, and specifically advised Wells of the acceptance of the offer to purchase* the capital stock of the corporation in question, and further said:

> "It will be appreciated if you would advise me when we may arrange to have a transfer of the stock *and the payment for same which I am ready, willing and able to do at your direction."* (Emphasis added.)

The acceptance was dated at Manhattan, Kansas, the 20th day of July, 1961.

After some difficulty Menzie found Wells in the probate court office in Manhattan and prevailed upon him to make a receipt for the acceptance, *which was endorsed upon the acceptance and dated the 20th day of July, 1961, at 10:45 a. m. and signed by Richard C. Wells.* Menzie then told Wells that if he would let him (Menzie) know when the parties could get together to complete the transaction, he would tell Souder. *All Wells would say was that he would see Lindsay.* This evidence is undisputed. Thereafter, the record does not disclose that Wells ever called Menzie or personally saw him on the 20th day of July, 1961, to tell him when and where the stock could be transferred and the payment made. The next morning, the 21st day of July, Menzie inquired of Wells when the parties might get together to complete the transaction, and Wells told him the deal was all over.

The record discloses that Souder waited in Menzie's office on the 20th day of July until noon, then went to lunch, called back about 1:30 or 2:00 p. m., and found that Menzie had not heard from Wells, whereupon Souder went to Lindsay's place of business, where he waited until about 2:30 p. m. before returning to Augusta, Kansas. Souder testified Lindsay was present in front of the store. He was not sure whether Lindsay heard him say he was returning to Augusta, but he thought Lindsay knew he was leaving.

Souder testified he was ready, able and willing to consummate the transaction on the 20th day of July, 1961, and has been since that date. Mr. Scorza of Kansas City, the finance officer of Cities Service Oil Company, so testified, and *the trial court so found by its findings numbered 4 and 5. The trial court also found the acceptance, "Exhibit B," was delivered to Richard C. Wells at 10:45 a. m. on July 20th; and this exhibit stated in writing that Souder was ready, able and willing to make the payment of $100,000 at the direction of Wells, for and on behalf of the appellees, upon transfer of the stock of the corporation in question.* It may therefore be said,

as a matter of law, the appellees knew what their agent Wells knew by this acceptance.

*After Souder left Manhattan* Lindsay and Torluemke went to Menzie's office on the 20th day of July at about 2:30 p. m., which they contended at the trial was an attempt to deliver the stock to Menzie, who had left his office before their arrival and was not available at that time. Here it must be noted it was Lindsay and Torluemke, the stockholders, who went to Menzie's office *and not Wells who was in complete charge of the transaction for them.* Insofar as the record discloses, Menzie at no time knew of the call Lindsay and Torluemke allegedly made at his office on July 20th at 2:30 p. m., and at no time was Menzie advised when or where the appellees were ready to deliver the stock so that he in turn could notify Souder on the 20th day of July.

The record discloses that Wells appeared as counsel for the appellant at the trial but did not testify. The testimony concerning his knowledge and part in the transaction was undenied. Both Lindsay and Torluemke acknowledged him as an agent in the transaction, and the option contract dated July 1, 1961, discloses Wells to be the *secretary* of the corporation in question. The record also discloses that Torluemke, *by his own testimony,* was in town all day on July 20th and received no calls from Wells, except after lunch about 2:00 p. m.

Upon acceptance of the contract by the appellant in the instant case, completion of the contract required a transfer and delivery of the two hundred shares of capital stock of the corporation in question by the appellees to the appellant, and required the appellant to pay the $100,000 to the appellees.

It is an academic rule in the law of sales that delivery and payment are *concurrent conditions.* Section 42 of the Uniform Sales Act states:

"Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price and the buyer must be ready and willing to pay the price in exchange for possession of the goods."

While Kansas has not adopted the Uniform Sales Act, this section is merely declaratory of the common law, and it is the law in Kansas.

*Nowhere did the parties here agree that payment should be a condition precedent to delivery of the stock.* The trial court found

there was a contemporaneous collateral oral agreement whereby the appellant was to pay the $100,000 to the appellees on or before July 20 *for the two hundred shares of capital stock,* in the event the appellant exercised his option. Upon acceptance of the option contract in this case the parties were confronted with completion of the contract by delivery of the stock and payment for it. *These were concurrent conditions.* Wells obviously did not have the stock with him for delivery at the probate court in Manhattan where the acceptance was delivered to him by Menzie.

The trial court in its memorandum decision considered the questions upon the trial of the case to be twofold: (1) Whether there was a contemporaneous collateral oral agreement between the parties that the appellant should pay *for the stock* on or before July 20, 1961; and (2) if there was such an agreement, whether the appellant complied with the terms thereof by tendering the purchase price of $100,000 on July 20, 1961. The second question, in my opinion, makes a false assumption that a tender of the purchase price was necessary under the terms of the contract upon all of the facts, conditions and circumstances presented by the record herein.

There is nothing mysterious concerning the legal definition of the word "tender." It is defined as an unconditional offer of money to pay a debt in Webster's Third New International Dictionary; and as an offer to deliver something, made in pursuance of some contract or obligation, under such circumstances as to require no further act from the party making it to complete the transfer in Bouvier's Law Dictionary (Baldwin's Student Edition, 1934). "Tender" is defined in Black's Law Dictionary (Fourth Edition) as "An offer of money; the act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition."

Under the circumstances here presented, the appellant was not required to make an *unconditional* offer of money *when his acceptance of the option contract was delivered to Wells.* No tender of the money at that time was necessary. *The appellant had communicated his acceptance of the contract in writing to Wells* in which he said he was *ready, willing and able* to make payment at the appellees' direction upon transfer of the stock. Under these circumstances, the burden was upon Wells, for and on behalf of

the appellees, to designate the time and place where the transaction could be consummated by notifying Menzie, for and on behalf of the appellant. Furthermore, Wells' statement to Menzie and conduct left the impression that Wells would notify Menzie after talking with Lindsay. If, in the opinion of Wells, the consummation of this contract was required on the 20th day of July, 1961, it was his obligation to so direct. Having failed to do so, the appellees cannot be heard to say the contract was not completed on the 20th day of July by the payment of the money, because it was their conduct, through their attorney, which prevented it. They are, in my opinion, estopped from asserting that payment was required on the 20th day of July, 1961, or, perhaps, it should be said they have by their conduct waived such requirement.

The trial court in its memorandum opinion relied upon *Bras v. Sheffield,* 49 Kan. 702, 31 Pac. 306, where a tenant lessee had an option to purchase the real estate at the expiration of the lease. Suit was brought for specific performance of the contract *after the expiration of the lease,* without there ever having been an *acceptance* (an election to purchase) by the lessee before the commencement of the action, and the court held there was no contract. Coupled with the holding was a statement as follows:

". . . Until they had elected to accept the offer made by Sage, and had paid or tendered the purchase-price stipulated in the contract, there was no sale or transfer of the title. . . ." (p. 710.)

The statement that the lessees were required to make payment or tender of payment to complete the sale *after acceptance* was dictum, since there was no acceptance. But even so the lessees in the above case at the expiration of the lease would have been *in possession of the land.* Had there been a timely acceptance, a *delivery* of the land to the purchasers would have been an accomplished fact. In the instant case the facts are to the contrary; there was never a tender of the stock to the appellant or his attorney, and no directions were forthcoming as to when and where the exchange could be made.

The appellees rely upon 12 Am. Jur., Contracts, § 329, p. 885; *Dill v. Pope,* 29 Kan. 289; *Supply Co. v. Cement Co.,* 91 Kan. 509, 138 Pac. 599; *Briney v. Toews,* 150 Kan. 489, 95 P. 2d 355; and Restatement, Contracts, § 315, p. 468, relative to the performance of a *condition precedent.* They quote the above Am. Jur. citation as follows:

"One who prevents or makes impossible the performance or happening of

a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its nonperformance. In other words, he who prevents a thing from being done shall never be permitted to avail himself of the nonperformance which he himself has occasioned. . . .''

The foregoing authorities have no application to the facts in this case. *Payment* for the stock in this case *was not a condition precedent*, but a *condition concurrent* with transfer of the stock by the appellees. If the above quoted citation has application to the facts in this case as clarified by the last sentence, it is in the appellant's favor. The failure of Wells to direct when and where the stock would be transferred in exchange for the money is responsible for the nonperformance of the appellant to pay the money on the 20th day of July. Nowhere in the written contract or the contemporaneous oral agreement was the time of day or place of exchange indicated. On these points the contract between the parties was silent.

It is respectfully submitted the trial court should be reversed.