James C. BRADFORD, Jr., on Behalf of himself and all others similarly situated, Plaintiff,

v.

CROWN–BREMSON INDUSTRIES, INC., Defendant.

Civ. No. 3426.

United States District Court
M. D. Tennessee,
Nashville Division.

Dec. 23, 1964.

Kenneth L. Roberts, and Robert G. Mc-Cullough, of Waller, Lansden & Dortch, Nashville, Tenn., for plaintiff.

E. H. Rayson, of Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn., and George Schwegler, Jr., of Smith, Schwegler & Schwartzman, Kansas City, Mo., for defendant.

## ORDER

WILLIAM E. MILLER, Chief Judge.

Plaintiff, James C. Bradford, Jr., is the owner of certain stock purchase warrants of the Cher-O-Kee Photofinishers, Inc. The defendant Crown-Bremson Industries, Inc., formerly doing business as Crown Photo, Inc., purchased the assets of Cher-O-Kee in exchange for Crown stock. As a part of the contract of sale, Cher-O-Kee and Crown entered into an agreement, dated July 31, 1961, concerning the disposition of the warrants not exercised before the closing of the contract of sale. Subparagraph iii of Paragraph 3(e) of the contract, relevant to the instant action, provides as follows:

> (iii) To the extent such options have not been exercised before the closing, Crown hereby agrees to assume and adopt such options as applicable to common stock of Crown in accordance with their terms, except that each option to purchase one (1) share of Cher-O-Kee at the stated option price shall instead constitute an option to purchase one-third (⅓) of one (1) share of Crown for the same price. For example * * *. Accordingly, after the closing, upon the exercise of any such option and the payment of the option price to Crown,

Crown shall issue and deliver to the optionee certificates for the appropriate number (computed in accordance with the foregoing provisions) of shares of common stock of Crown. Before such issuance and delivery, if registration of such Crown shares under the Securities Act of 1933 is required, Crown shall so register such shares, and such shares shall not be issued and delivered until the registration is effective.

On October 23, 1961, plaintiff, acting on behalf of himself and J. C. Bradford & Co., wrote Kramer, Dye, McNabb and Greenwood, a firm of attorneys at Knoxville, Tennessee, which firm was acting as transfer agent in connection with the acquisition, advising them of plaintiffs' desire to exercise 3,000 of the Warrants in exchange for defendant's stock. Plaintiff was thereupon advised that it would be necessary to register shares under the Securities Act of 1933 in order to have shares to transfer to plaintiff in exchange for the warrants and purchase price, and that defendant was considering registering such shares in 1962. Plaintiff contends that defendant repeatedly assured plaintiff that defendant would register some shares in order that plaintiff could exercise his option to purchase. Defendant in fact did not register any shares. The last refusal to do so came at the Board of Directors meeting on September 17, 1962. Plaintiff made several demands in the interim but to no avail. At the time of the initial request, defendant's stock was selling for approximately $20.00 per share. By exercising all of his warrants at that time and selling the acquired Crown shares immediately, plaintiff could have realized a net profit of some $23,339.20. Plaintiff is now suing to recover this amount, charging defendant with a willful and intentional breach of the above-mentioned agreement of July 31, 1964.

Defendant has moved to dismiss the complaint for failure to state a claim upon which relief can be based, or in the alternative, for summary judgment dismissing the complaint. Its contention is based on the general theory that this case involves a simple matter of contract interpretation. According to its view, the contract itself sets forth the manner in which the option created thereby was to be accepted, and requires (1) the exercise of the warrant, and (2) the payment of the warrant price to the corporation. It argues that since plaintiff had at best only complied with the first of these two specific prerequisites, no duty to register arose and consequently there was no breach of contract on its part.

■ In corporate jargon, a warrant is an option to purchase stock at a given price. See 19 Fletcher's Cyclopedia Corporations, § 8907 at p. 65. It is a well settled rule of corporate law that an option to purchase stock must be exercised, if at all, strictly in accordance with its terms. 12A Fletcher's Cyclopedia Corporations, § 5575 at p. 37. The terms and conditions control as to the manner of acceptance, Souder v. Tri-County Refrig. Co., 190 Kan. 207, 373 P.2d 155, and the optionee must unequivocally accept according to these terms, Finnell v. Bromberg, 79 Nev. 211, 381 P.2d 221. If by the express terms of the option agreement payment of the purchase price, or a portion thereof, is required to accompany the optionee's election to exercise the option, then the making of such payment is necessary to the acceptance. Rank v. Sullivan, Fla.App., 132 So.2d 32.

■ This being a diversity action, the Court will of course apply the law of the state in which it sits. No Tennessee cases in point as to the exercise of options to purchase stock have been brought to the attention of the Court. However, a perusal of Jones v. Horner, 36 Tenn.App. 657, 260 S.W.2d 198, a Tennessee case involving an option to purchase real estate, leaves the impression that the general rules regarding the exercise of options are as settled in Tennessee as elsewhere.

"An option is a unilateral contract whereby the optioner for a valuable consideration grants the optionee a right to make a contract of purchase but does not bind the optionee to do so;

\* \* \* It is a continuing offer to sell irrevocable during the option period. \* \* \* Its transition into a contract to purchase can be effected only by an unqualified unconditional acceptance in accordance with the terms and time specified." 260 S.W.2d at 199.

Plaintiff contends that a strict rule of construction should not apply for the reason that he is suing for breach of contract, not for specific performance, a remedy involved in many option cases where the strict rule was enunciated. In other words, plaintiff claims that by virtue of the purchase agreement defendant obligated itself to register securities, and then breached said agreement by not doing so. The Court is of the opinion that plaintiff's theory is untenable. In essence, the case boils down to this: The agreement which plaintiff relies upon is an option. It would not become a contract until plaintiff accepted it. Plaintiff contends that he did accept and then defendant did not perform. Defendant claims that plaintiff did not accept; that he only performed one of two acts necessary to constitute an acceptance. In order to determine the crucial issue of whether plaintiff did in fact accept, the Court must interpret the option, and this must be done in accordance with the established principles dealing with the acceptance of options to purchase stock. As already stated, these principles require that such an option be accepted in strict compliance with its terms. In any case, if plaintiffs' theory were correct the contract of sale plainly states that the defendant adopts the warrants "in accordance with their terms." In order to determine whether defendant has breached, it is necessary to decide whether plaintiff accepted in accordance with these terms, which again involves the interpretation of an option.

This being the case, the Court must examine the pertinent language of the agreement, as hereinbefore quoted, in order to ascertain what was in fact necessary in order to constitute a valid acceptance of the option to purchase.

The agreement, as the Court views it, is susceptible of but one reasonable interpretation. Crown agreed to issue and deliver stock certificates "upon the exercise of any such option and the payment of the option price to Crown." The quoted language plainly imposes upon Crown the duty to issue and deliver stock only when the holder of the option exercises same *and* pays the money. This conclusion is reinforced by the presence of the following terms in the original option agreement which terms are adopted as a part of the contract of sale:

"This is to certify that _____ is entitled to purchase _____ shares of full, paid and nonassessable Class A Common Stock of the above Corporation at $2.80 per share upon presentation of this warrant and payment of the purchase price at the office of the Corporation \* \* \*."

Such issuance and delivery were thus to take place at a point in time *after* the performance of the two acts of acceptance. The portion of the agreement which deals with the registration of Crown shares begins with the phrase "before such issuance and delivery", and ends with "such shares shall not be issued and delivered until the registration is effective." The clear import of this language is that Crown did not have to register any shares until it became necessary to issue and deliver them, and that if registration was necessary such issuance and delivery would be deferred until such time as the registration had become effective. The overall effect of the whole paragraph would appear to be that in order to accept the option the warrant holder was required to exercise his warrant and pay the purchase price. If registered shares were available Crown would then be obligated to issue and deliver them. If it were necessary to register new shares, then the issuance and delivery would not take place until after such registration had become effective.

Plaintiff has failed to allege that he did in fact make any payment or at any time attempt to tender payment for the purchase price of the shares which he

wished to purchase by the exercise of his warrants. Hence he failed to comply with the clear requirements of the agreement itself, and the duty of the defendant to issue and deliver the shares to plaintiff never arose.

Plaintiff further contends that the rule of "practical construction" should be applied to the contractual provisions. Under this rule, when the provisions of a contract are ambiguous or unclear, they should be interpreted in accordance with the interpretation apparently placed upon them by the parties as shown by their conduct. However, in view of the Court's opinion that the agreement is not ambiguous, this rule of construction does not come into play.

But there is another string to plaintiff's bow. He contends that defendant, by conducting himself at variance with the terms of the agreement, led plaintiff to believe that it would not be necessary for him (plaintiff) actually to pay money before defendant would register some shares. It is contended that plaintiff relied on the conduct of defendant and defendant now is estopped to assert the terms of the contract itself. In support of this contention the petitioner offers several letters and deposition testimony relating to conversations and other exchanges of communication between himself and defendant. Plaintiff asserts that he did in fact indicate a desire to exercise his warrants, and that defendant led him to believe that it would soon register shares in order that plaintiff might exchange his warrants therefor as per the contract.

An examination of the communications attached as exhibits to plaintiff's complaint shows that plaintiff did indicate to the defendant that he "would like to exercise these warrants and receive saleable shares in return." This can be taken as no more than an indication of a desire to exercise, and not as an actual attempt to exercise. Plaintiff also requested information regarding the procedure for exercising these warrants. It is observed that in return defendant and its agents indicated that it would be necessary for them to register some shares before they could be transferred to the plaintiff. However, nothing in the correspondence from defendant to plaintiff indicates an affirmative attempt to prevent plaintiff from exercising his warrants. At best, defendant advised plaintiff that it had no ready shares, and that it would register shares as soon as possible. It was not the responsibility of the defendant to interpret the provisions of the contract for the plaintiff. It informed plaintiff that it would have to register shares. It did not tell the plaintiff that he could not or should not exercise his warrants. Plaintiff could, by reading either the warrant itself or the agreement, easily have ascertained the two steps necessary for exercising the warrants. Again, a perusal of the contract would have made it clear to him that he could have forced a registration simply by exercising his warrants in the manner delineated in the agreement.

Finally, plaintiff asserts that the complaint should not be dismissed at this stage because to do so would deprive the plaintiff of his opportunity to prove a state of facts under which relief could be granted. In the Court's opinion, if the facts as developed by the pleadings, exhibits and depositions are taken in their most favorable light to the plaintiff, a case for relief against the defendant is not established as a matter of law. When it is clear that the facts relied on by plaintiff do not entitle him to relief, defendant is entitled to summary judgment. *Friedman v. Washburn Co.*, 7 Cir., 145 F.2d 715. See also 28 U.S.C.A. Rule 12 (b), and citations under note 179.

Since the plaintiff's action must be dismissed on the merits pertaining to his own individual claim, it follows that such dismissal will be without adverse effect as to other warrant holders.

An order sustaining defendant's motion for summary judgment and dismissing the plaintiff's action will be presented for the Court's approval, such dismissal to be with prejudice as to the plaintiff, but without prejudice to any claims of other warrant holders.