LAY, Chief Judge.
 

 Merrimac Associates, Inc. (Merrimac) appeals from a district court
 
 [1]
 
 judgment affirming limitation of Merrimac’s compensation for professional consulting services rendered to a Chapter 11 debtor in possession, Daig Corporation (Daig). Daig employed Merrimac for two months in 1981 under a management consulting agreement. The bankruptcy court
 
 [2]
 
 limited Mer-rimac’s compensation to an amount previously paid by Daig and invalidated Merri-mac’s warrant to purchase Daig common stock.
 
 See In re Daig Corp.,
 
 48 B.R. 121, 137-38 (Bankr.D.Minn.1985). The bankruptcy court based its order on a finding that Merrimac was not a “disinterested person” under the Bankruptcy Code.
 
 [3]
 

 See id.
 
 at 131-34. This order was affirmed summarily by the district court. We affirm the judgment of the district court.
 

 Shortly after Daig entered bankruptcy in early June of 1981, it hired Merrimac as a management consultant. Merrimac’s compensation rate was set at $1,500 per week. In addition, Merrimac received a five-year warrant to purchase 15% of Daig’s common stock, some 138,514 shares, at one cent per share. On June 18, 1981, the Honorable Kenneth Owens, Bankruptcy Judge for the Bankruptcy Court of the District of Minnesota, authorized Daig to retain Merri-mac’s services. The court, however, explicitly reserved all questions regarding the terms of retention and compensation. Daig ultimately paid Merrimac $12,898.84 in compensation and expense reimbursements for the approximately two months Merrimac’s employment lasted.
 
 [4]
 

 Validity of Merrimac’s stock purchase warrant is the focus on appeal. Although the compensation package never
 
 *1253
 
 was approved or disapproved by the bankruptcy court during Merrimac’s tenure at Daig, the bankruptcy court found that at all times Robert Stahl, Merrimac’s president and owner, believed that his company held an enforceable warrant. We need not address the question whether subjective belief can make a party nondisinterested within the terms of the statute, although that rationale was the basis for the bankruptcy court’s decision. We find the
 
 issuance
 
 of the warrant between the parties was sufficient to make Merrimac a warrant holder, both in law and in fact.
 

 A warrant is defined as an option to purchase shares of corporate stock at a fixed price. 4
 
 Fletcher Cyclopedia of the Law of Private Corporations
 
 § 8907, at 70 (rev. ed. 1985);
 
 see also Bradford v. Crown-Bremson Industries, Inc.,
 
 255 F.Supp. 1009, 1012 (M.D.Tenn.1964);
 
 Miller v. General Outdoor Advertising Co.,
 
 223 F.Supp. 790, 794 (S.D.N.Y.1963). Until the bankruptcy court avoided the agreement, Merrimac possessed a legal document providing an inchoate right to purchase Daig stock at a fixed rate of one cent per share. On its face, this document was a stock purchase warrant. We find that the document was what it purported to be. The fact that the warrant was later invalidated by the bankruptcy court cannot diminish its legal significance. We thus find that Mer-rimac held a valid warrant under 11 U.S.C. § 101(15)(C) throughout the period it was employed by Daig.
 

 The Bankruptcy Code is clear in its treatment of warrant holders employed by debtors in possession. Warrant holders are included in the Code’s definition of equity security holders.
 
 See
 
 11 U.S.C. § 101(15)(C). To be “disinterested” under the Code, a person cannot hold an equity security.
 
 See
 
 11 U.S.C. § 101(13)(A). A warrant holder thus is not a disinterested person. Moreover, 11 U.S.C. § 328(c) states that the bankruptcy court “may” deny allowance of compensation for a professional who is not a disinterested person at any time during the employment by the debtor. Under this simple formula, Merri-mac’s status as a warrant holder in substance makes Merrimac nondisinterested and within the ambit of § 328(c). Nullification of the stock purchase warrant was an appropriate sanction in light of the potential conflict of interest engendered by the putative warrant.
 
 [5]
 

 We further find the bankruptcy court did not abuse its statutory discretion to deny Merrimac compensation beyond the $12,898.84 already paid by Daig.
 

 Judgment affirmed.
 

 [1]
 

 . The Honorable Robert G. Renner, United States District Court for the District of Minnesota, presiding.
 

 [2]
 

 . The Honorable Margaret A. Mahoney, Bankruptcy Judge for the Bankruptcy Court of the District of Minnesota, presiding. The Honorable Kenneth Owens presided over some earlier portions of the Daig bankruptcy case.
 

 [3]
 

 . The relevant Code provisions are: 11 U.S.C. § 328(c):
 

 Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person’s employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.
 

 11 U.S.C. § 101:
 

 (13) "disinterested person” means person that—
 

 (A) is not a creditor, an equity security holder, or an insider;
 

 * * * * * *
 

 (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;
 

 ******
 

 (15) "equity security" means—
 

 ******
 

 (C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph; (16) "equity security holder" means holder of an equity security of the debtor.
 

 [4]
 

 .Daig, pursuant to its authority under the agreement, terminated the relationship as of August 8, 1981. The reasons for termination are not fully developed in the record and are not relevant to this appeal.
 

 [5]
 

 . We recognize the need for professional persons to assist debtors in some bankruptcy cases. If today’s ruling makes retention of these experts more difficult, as Merrimac argues that it will, the professional persons’ true complaint is with Congress. As it stands today, congressional policy is to avoid conflicts of interest in the administration of bankruptcy estates. We uphold that policy.