No. 29,733.

F. S. KIRK, *Appellee* and *Cross Appellant*, v. THE FIRST NATIONAL BANK IN WICHITA (THE EXCHANGE TRUST COMPANY OF TULSA, OKLA., and GEORGE W. MILLER, as Administrator of the Estate of George L. Miller, Deceased, Interveners, *Appellants*).

(295 Pac. 703.)

Opinion filed February 7, 1931.

*John Madden, John Madden, Jr.,* both of Wichita, and *Joe Chambers,* of Tulsa, Okla., for the appellants.

*Fred Hinkle,* of Wichita, for the appellee and cross appellant.

The opinion of the court was delivered by

HARVEY, J.: This is an action to recover a sum deposited in escrow with a contract for the purchase of an assignment of an oil and gas lease on the ground that the assignment was not furnished within the time contemplated by the contract, and specifically provided by parol agreement made at the time the contract placed in escrow was executed. The action was against the escrow holder, but the real parties in interest intervened, and at the trial the contest was between the plaintiff and the interveners. The jury answered special questions and returned a general verdict for plaintiff, and from this the interveners have appealed. Plaintiff also

sought to recover damages for the lost opportunity to resell the assignment of the lease. As to this the trial court sustained a demurrer to plaintiff's evidence, and from this ruling the plaintiff has appealed.

We shall first treat the interveners' appeal. As to that the facts disclosed by the record may be thus stated: George L. Miller and his brother, Zack T. Miller, partners as Miller Brothers, owned an oil and gas lease on an eighty acres of land in Sedgwick county, which lease had been taken in the name of George L. Miller. George L. Miller had died, and the Exchange Trust Company, of Tulsa, Okla., and George W. Miller, of Ponca City, were administrators with the will annexed, of his estate. The estate appears to have been a large one. Fred D. Olmstead was superintendent of the land department of Miller Brothers and the authorized agent of the administrators and Zack T. Miller to make agreements respecting their oil and gas leases. On July 22, 1929, as agent for and on behalf of the estate of George L. Miller, he executed a written agreement with the plaintiff for the sale of an oil and gas lease on a certain eighty acres of land in Sedgwick county, Kansas, for the sum of $1,500, upon approval of the title to the lease by the attorney of the purchaser. The agreement provided that the money should be deposited in escrow in the First National Bank in Wichita pending the approval of the title, and that it was understood and agreed by the parties that the title to the oil and gas lease was in the estate of George L. Miller, and that the transfer must meet the approval of the county court of Kay county, Oklahoma. It was agreed that the purchaser should have fifteen days to examine title and make requirements after he had received the abstract, and that the first party should have fifteen days thereafter to comply with any requirements made. The contract of sale, when executed by the purchaser and by Olmstead on behalf of the estate, was placed in the bank in escrow, together with the $1,500 to be paid by the purchaser. On August 14, 1929, the administrator reported the sale to the county court of Kay county, Oklahoma, and gave ten days' notice of the hearing for authority to make the sale. That hearing was had August 24, 1929. The court approved the sale, and the assignment was executed on that date by the executors of the estate and by Zack T. Miller, but the assignment and abstracts were not forwarded to the escrow bank until September 16, 1929.

Plaintiff alleged in his petition that at the time of the execution of the written agreement, July 22, 1929, Olmstead agreed with the purchaser that if he would execute the agreement as prepared and deposit the $1,500 in escrow he would procure the execution of the assignment of the oil and gas lease and have it sent promptly, within a few days; that the purchaser advised Olmstead that a well was then being drilled on the lease about a mile and a half from the land described in the lease to be sold, and that he wanted this assignment for the purpose of resale, and that Olmstead orally agreed and warranted to the purchaser, for and on behalf of his principals, that the assignment would be executed and placed in escrow so that the purchaser might show it to a prospective buyer within a few days; that, relying upon those representations, the purchaser executed the written agreement and placed the $1,500 in the escrow bank, and that, further relying on having the assignment promptly, he did negotiate a sale of the assignment at a profit to him of $900, which sale he was unable to complete because of the delay of the interveners to place the assignment in the escrow bank within the time to which they had agreed. The interveners admitted the authority of Fred D. Olmstead to execute the written agreement with plaintiff, alleged that they had fully complied with it, and denied all the other allegations of the petition.

The jury, in answer to special questions, found that the administrators of the Miller estate could have presented to the county court of Kay county, Oklahoma, a report of the sale of the oil and gas lease in controversy and applied for its confirmation within two days after July 22, 1929, and that the same would have been confirmed within ten days thereafter; that they did not use due diligence in making application to the court for the confirmation of the sale, and that they did not meet the requirements of the written contract within a reasonable time.

There was an abundance of evidence to sustain the allegations of plaintiff's petition and the findings of the jury. C. E. Abell, who was agent for the plaintiff, in his negotiations with Fred D. Olmstead, discussed with Olmstead the importance of promptness in having the assignment of the lease. Both he and Olmstead were familiar with the fact that a well was being drilled on another lease near by, which well was then down to a depth of 3,600 feet, and it was expected it would reach the oil-bearing sand at about 4,000 feet,

and that the purchaser might want to sell this lease before that well reached that depth. At the execution of the contract in the office of the attorney, Olmstead specifically agreed to take the train at once for Oklahoma, have the assignment of the lease made, and present it promptly to the county court of Kay county, where there would be no difficulty in having it approved, and that a copy of the assignment, waiting only the approval of the court, would be sent to the escrow bank within two days. Upon the completion of the business in the office of the attorney, C. E. Abell took Mr. Olmstead to the train, where he stated he was going to Oklahoma for that purpose.

The legal point presented by the interveners on appeal is that the evidence relating to the time when this assignment would be furnished, being of conversations had prior to or at the time of the execution of the written contract, tended to vary the terms of that contract and was a violation of the parol-evidence rule. This point is not well taken. It is well established that when a written contract is silent as to a particular matter discussed and agreed upon between the parties, parol evidence may be offered on that matter without varying the written contract. (*Kaul v. Telephone Co.,* 95 Kan. 1, 147 Pac. 1130; *Berg v. Scully,* 120 Kan. 637, 245 Pac. 119; *Mayse v. Grieves,* 130 Kan. 96, 99, 285 Pac. 830, and cases there cited.) Appellants contend that this rule is not applicable here for the reason that in the absence of any statement in the contract with respect to the time when the assignment would be furnished the law would import within a reasonable time, and that a reasonable time, under the circumstances here disclosed, would necessarily be more than the few days shown by the agreement. The court instructed the jury on the question of performance within a reasonable time, and no complaint is now made of those instructions, and in answer to a special question the jury found that the interveners did not perform within a reasonable time.

Appellants argue that time of performance was not of the essence of the contract. It is true that it contained no statement to that effect; but the nature of the property being sold—an oil and gas lease—and the circumstances under which the contract of sale was made—an oil well drilling near by with fluctuating lease values depending on the success of that well—had the effect of making time of performance of the essence of the contract. (*Waterman v. Banks,* 144 U. S. 394, 46 L. Ed. 479.)

The well on the near-by lease was completed to the oil sand about August 12, and proved to be a dry hole. The interveners did not present their petition to the county court until after that date, and when it was approved and executed there was a long delay before it was sent to the escrow bank. We see no error on the interveners' appeal.

On the cross appeal of the plaintiff there was evidence that the plaintiff, through his agent, C. E. Abell, had negotiated a sale of an assignment of this oil and gas lease to one O. B. Henry, who was ready, able and willing to buy it for $2,400 cash, but plaintiff was unable to complete the sale because of the delay of the interveners in complying with their agreement with plaintiff. The demurrer to this evidence necessarily admits all the reasonable inferences to be drawn from it, and with evidence before the court tending to show an unreasonable delay of the interveners in complying with their agreement with plaintiff, which evidence was sufficient to sustain a judgment for plaintiff for the money in escrow, it seems clear that to sustain a demurrer to the item for loss of profits was erroneous. At least one of plaintiff's purposes in buying this lease from interveners was for sale at a profit, a fact well known to the agent of the interveners at the time the agreement was made.

The result is that the judgment appealed from by the interveners is affirmed, and the ruling of the court sustaining the demurrer to plaintiff's evidence on the item of damages for loss of profits is reversed, with directions to grant a new trial thereon.