No. 46,598

LEWIS MERLE RYMPH and RUTH M. RYMPH, his wife; WILLIAM H. RYMPH and DOROTHY JOANNE RYMPH, his wife; and MARGUERITE COFFEY, *Appellants,* v. DERBY OIL COMPANY; COLORADO OIL AND GAS CORPORATION, INC.; GEORGE ROBINSON and ANDREW BEFORT, *Appellees.*

(507 P. 2d 308)

Opinion filed March 3, 1973.

*Gregory J. Herrman,* of Hays, argued the cause, and *Henry F. Herrman,* also of Hays, was with him on the brief for the appellants.

*J. H. Eschmann,* of Topeka, argued the cause and was on the brief for the appellee, Andrew Befort.

*Jerry M. Ward,* of Great Bend, argued the cause and was on the brief for the appellees, Derby Oil Company and Colorado Oil & Gas Corporation, Inc.

*Lee Turner,* of Great Bend, and *Steven P. Flood* and *Robert F. Glassman,* both of Hays, were on the brief for the appellee, George Robinson.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from a judgment of a trial court holding that the parties to this appeal entered into an agreement to compromise and settle a certain damage claim. The amount of plaintiffs' "out-of-pocket" expenses and reasonable attorney fees, agreed to be paid under the terms of the agreement, were determined by the court and a judgment therefor was entered against the defendants in the sum of $3,175.00. The plaintiffs have appealed. We will continue to refer to the parties as they appeared in the court below.

The plaintiffs are the owners of the El Charro Motel in Hays, Kansas. The defendants are the owners, suppliers or lessees of a gasoline service station located adjacent to the motel. Gasoline from the underground storage facilities on the defendants' property escaped and polluted the wells which were the only source of water supply for the motel. As a result of this pollution from defendants' facilities two separate actions were filed. One action was filed by the plaintiffs and a second action was filed by another property owner, Lois Binder. Both claims were set for trial in the district court and on the morning the Binder claim was to be tried a compromise settlement was proposed by the defendants and accepted by Mrs. Binder, whereby defendants agreed to drill a new fresh water well on the Binder property, pay "out-of-pocket" expenses and reasonable attorney fees in full settlement of the Binder claim. The Binder claim has since been settled and the action dismissed in compliance with this compromise agreement.

The same attorney represented both the Rymphs and Mrs. Binder. The defendants' attorneys were the same in both cases. When the Binder compromise settlement was agreed upon the following colloquy in regard to the Rymph claim occurred between the court and claimants' counsel in the presence of defendants' attorneys in open court:

"THE COURT: Does that proposal also apply to the Rymph case?

"MR. HERRMAN: I haven't talked to Bill yet, but I am going to talk to him and I think he would agree to the same thing, because that is all he is interested in, is the fresh water.

"THE COURT: But for now it applies to the Binder Case?

"MR. HERRMAN: Yes, sir."

Both cases were continued pending the drilling of fresh water

wells. A few days thereafter on November 26, 1969, plaintiffs' attorney wrote to defendants' attorneys as follows:

"I have discussed the matter of drilling a well with both of our clients, that is Irene [Lois] Binder and Bill Rymph et al and they are both agreeable that if you and the other defendants are able to provide them with a fresh water supply they are willing to drop their law suit as, of course, that is all they are interested in.

"However, you do understand that none of the parties are able to stand the costs which are involved in this matter and in order to make a full and final settlement of the case it would be necessary that you and the other defendants agree to pay the costs incurred by them along with the attorneys fees.

. . . . . . . . . . . . . . .

"In our conversation in the Courthouse the other day one of the attorneys mentioned or inquired whether or not I had more than fifty hours involved in this case. Conservatively I would estimate that I have in the vicinity of one hundred and fifty hours involved in this and the reason I do not have an exact figure is that I originally took the cases on a contingency basis and consequently keep no record of the time involved."

A postscript on this letter of November 26, 1969, reads as follows:

"P. S. Bill Rymph called me today and informed me that they have spent $1,475.00 for hauling water, drilling wells, laying pipe and other expenses directly connected with the pollution and can furnish invoices showing the same."

Some three and one-half months were consumed in successfully drilling and equipping the new well on the Rymph property. Fresh water was obtained, and the hookup was completed at the motel on March 9, 1970. When the well was nearly complete plaintiffs sought to repudiate the agreement because of delay in making the well operational. In June, 1970, a claim for $20,000 in damages was made by the plaintiffs against defendants. The fragile accord having been shattered, the parties returned to the court for a determination of their differences. The defendants amended their pleadings on January 19, 1971, to allege the compromise and settlement agreement, and they asked the court to determine the amount owed to plaintiffs for "out-of-pocket" expenses and attorney fees.

At the trial one of the owners of the motel, William H. Rymph, testified that on November 24, 1969, his attorney Herrman called and told him an agreement had been worked out; that the defendants would drill a well and see if they could get fresh water; and that if they could furnish the motel with fresh water and would in addition pay the "out-of-pocket" expenses and attorney fees in full plaintiffs would drop the case. He further testified that he checked

with his co-owners to get their approval of the settlement. In answer to questions he testified as follows:

"Q. Did they all approve of the settlement agreement?

"A Yes.

"Q And did you call Mr. Herrman and tell him that you and all of your co-plaintiffs, or your co-owners were all agreeable to that settlement?

"A Yes.

"Q All right. And then Mr. Herrman wrote a letter to Mr. Ward, dated November 26, 1969, which has been introduced here as Defendants' exhibit #7, and a copy of that went to you; did it not?

"A Yes.

"Q You have seen that letter?

"A Yes.

"Q And that letter then set out the agreement, the fact that you and your other co-owners were agreeable to the settlement we had just discussed?

"A Yes

"Q And you remember that in that letter Mr. Herrman indicated in defendants' Exhibit #7, he indicated that if you were provided with a fresh water supply you would be willing to drop the lawsuit, or settle the lawsuit because that is what you wanted?

"A Yes.

"Q And you remember that in that letter that as a part of the settlement you would expect reimbursement for your actual out-of-pocket expenses; is that correct?

"A That is correct.

. . . . . . . . . . . . .

"Q All right. Now you remember the letter set out the fact that it said on page five, 'Bill Rymph called me today and informed me that they have spent $1475.00 for hauling water, drilling wells, laying pipe and other expenses directly connected with the pollution and can furnish invoices showing the same?'

"A Yes.

"Q Do you recall that?

"A Yes.

"Q Was that a correct statement then?

"A As of that date regarding what work we had done on the water system itself, yes."

The matter was fully tried to the court and the court found that an agreement to compromise and settle the damage claim had been agreed upon, that under the agreement defendants were to drill and equip the well so as to furnish an adequate supply of fresh water to the motel and to pay the plaintiffs' "out-of-pocket" expenses incidental to the pollution plus reasonable attorney fees, in return for which plaintiffs agreed to drop their lawsuit. The judge found the well was drilled within a reasonable time, it provided an ade-

quate supply of fresh water to the motel, the "out-of-pocket" expenses at the time of the trial incidental to the pollution were $1,675.00 and reasonable attorney fees were $1,500.00. Judgment was entered for these amounts and costs were taxed to the defendants.

The law favors the compromise and settlement of disputes and when parties enter into an agreement settling and adjusting a dispute neither party is permitted to repudiate it in the absence of fraud, bad faith or mutual mistake of fact. (*Connor v. Hammer,* 201 Kan. 22, 439 P. 2d 116; *Reynard v. Bradshaw,* 196 Kan. 97, 409 P. 2d 1011; *International Motor Rebuilding Co. v. United Motor Exchange, Inc.,* 193 Kan. 497, 393 P. 2d 992.)

When time of performance is not fixed in an executory contract the usual rules of construction should be employed to ascertain the intention of the parties, and if the nature of the subject matter and the surrounding circumstances so indicate a reasonable time for performance shall apply. (*Brown v. Cruse,* 90 Kan. 306, 133 Pac. 865; *Woodman v. Millikan,* 126 Kan. 640, 270 Pac. 584; see also *Kirk v. First National Bank,* 132 Kan. 404, 295 Pac. 703.)

It is apparent from the facts and circumstances of our present case that defendants were to be afforded a reasonable time in which to drill the well. What is a reasonable time for performance is generally a question for the trier of fact. (*Morrison v. Wells,* 48 Kan. 494, 29 Pac. 601; *Marsh v. Brown-Crummer Inc. Co.,* 138 Kan. 123, 23 P. 2d 465.) This being so we believe the trial court as the trier of fact was justified under the evidence in finding the well was completed "within a reasonable time and as expeditiously as possible under the circumstances."

The appellants attack the findings of fact of the trial court as to the "out-of-pocket" expenses incurred. The amount claimed in the letter of November 26, was increased by $200.00. It is readily apparent that certain items of expense claimed by the plaintiffs at the time of trial, such as personal labor and loss of the value of the previous wells on the premises, do not fall in the category of "out-of-pocket" expenses. The amount of expenses payable was a question for the trier of the facts. When findings of fact are attacked for insufficiency of the evidence the power of this court on appeal begins and ends with a determination of whether there is any substantial evidence to support the findings. It is not the function of the appellate court to weigh conflicting evidence, pass on the

credibility of the witnesses or to redetermine questions of fact. (*White v. Hutton,* 205 Kan. 715, 472 P. 2d 223; *Brohan v. Nafziger,* 206 Kan. 58, 476 P. 2d 649; *Huxol v. Nickel,* 206 Kan. 102, 476 P. 2d 606.) This court is concerned only with evidence which supports the trial court's findings and not with the evidence tending to establish contrary findings. (*Jensen v. Jensen,* 205 Kan. 465, 470 P. 2d 829; *Morris v. Hoesch,* 204 Kan. 735, Syl. ¶ 3, 466 P. 2d 272.)

Plaintiffs complain of the amount of reasonable attorney fees allowed by the trial court. In the record before this court it appears the plaintiffs submitted a claim for attorney fees of $3,080.00. We find no evidence in the record to indicate how such figure may have been arrived at by plaintiffs. We note that when the letter of November 26, 1969, was sent plaintiffs' attorney was claiming a total of 150 hours spent on both the Binder claim and the Rymph claim. There is nothing further in the record. The amount of reasonable attorney fees was a question of fact. What is reasonable in the community under prevailing practices must be left to the decision of the trial court. The reasonable value of attorney fees when determined by a trial court as the trier of facts will not be subject to redetermination by this court. The value of legal services in a case pending before a trial court may be determined by that court from its own knowledge and professional experience in the community or the court may require additional expert testimony. (See *Service v. Pyramid Life Ins. Co.,* 201 Kan. 196, 440 P. 2d 944; *Wollard v. Peterson,* 145 Kan. 631, 636, 66 P. 2d 375, and *Epp v. Hinton,* 102 Kan. 435, 170 Pac. 987.)

This case on appeal presents only questions of fact which were determined in the court below. There is substantial evidence in the record to sustain the trial court's findings. The findings adequately support the judgment from which the plaintiffs have appealed. No prejudicial error appears.

The judgment is affirmed.