No. 47,613

Parsons Mobile Products., Inc., *et al.*, *Appellants*, v. William F. Remmert, *et al.*, *Appellees*.

(531 P. 2d 428)

Opinion filed January 25, 1975.

*Charles F. Forsyth,* of Erie, argued the cause, and *Clark M. Fleming,* also of Erie, was with him on the brief for the appellants.

*Jack L. Goodrich,* of Parsons, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This action was brought against a former employee and director of a corporation for violation of the trust imposed in him as an employee and director of Parson's Mobile Products, Inc. (Mobile). The employee and director, William F. Remmert, resigned his office as president and general manager of Mobile and then actively initiated the organization of a similar business, Parsons Custom Products, Inc. (Custom). The newly formed corporation was joined in this action. Both corporations were formed for the purpose of building special mobile units such as ambulances, bookmobiles and recreational vehicles. Mobile and its directors Baugh, Echols, Conder, and Jones filed claims against Remmert and Custom for damages and for a permanent injunction to prevent further alleged unfair competition and unlawful trade practices.

After a full trial to the court judgment was entered in favor of the defendants, Remmert and Custom. The plaintiffs appeal.

The trial court made detailed findings of fact and the points raised on appeal are directed toward the sufficiency of the evidence to support the trial court's findings. We will address ourselves to the points raised after we set forth some of the background facts giving rise to the controversy.

Mobile was incorporated in 1967 for the primary purpose of customizing special purpose motor vehicles. Its office and principal place of business was in Parsons, Kansas. It employed fifteen to twenty people. The original incorporators were from the Parsons

community. By 1970 certain debts had accumulated until it became necessary to obtain new capital for the business. Remmert, as director and general manager of Mobile, announced a sale of stock. Four businessmen from Texas (Baugh, Echols, Conder and Jones) became interested in Mobile and purchased all of the outstanding stock except 24 shares retained by Remmert. There was a full disclosure of the financial status of the company before the sale. The company was losing $5,000.00 to $7,000.00 per month.

After the sale Remmert was elected president and continued as general manager of Mobile. Three of the Texas directors and Remmert then arranged for a $200,000.00 loan from a Texas bank to raise the necessary operating capital for the company. Each of the four directors, including Remmert, assumed personal liability for the loan up to a maximum of $50,000.00.

The company continued to operate at Parsons and continued to lose money. Its debts exceeded its assets by a substantial sum. Early in 1971, the Texas directors began to talk about moving the company to Texas. Remmert remained loyal to Parsons. He did not want to move the company to Texas. The Texas directors continued discussions on the subject and it became apparent to Remmert in March of 1972, that a move to Texas would occur. Remmert then began to make inquiries and in April, 1972, he wrote to the Parsons Chamber of Commerce to ascertain if there was sufficient local interest in the business to form a corporation and continue the business in Parsons. This was prefaced upon the assumption that Mobile would become inactive or move to Texas.

As a result of Remmert's efforts articles of incorporation were prepared and executed by three local businessmen and Parsons Custom Products, Inc. was organized with authority to begin business on July 18, 1972. Remmert did not own stock in the new company but it was understood that he could, at his option, acquire equal ownership with the original incorporators.

Remmert as president and general manager of Mobile had been instructed by the board of directors in May, 1972, not to accept orders for vehicles which could not be completed before July 15, 1972, the date fixed for the corporation's move to Texas. However, Mobile did continue manufacturing vehicles in Parsons until August 17, 1972, at which time all employment in Parsons was terminated. No director's meetings have been recorded in the books of the company since July 6, 1972.

On July 6, 1972, the Texas directors of Mobile requested the resignation of Remmert as president and general manager of Mobile. His resignation was immediately given and thereafter Mobile operated without a general manager until the orders previously accepted by it were completed. On August 17, all work on such orders was completed and all employees were notified that their employment with Mobile was terminated.

Remmert had been employed by Custom the day after his resignation was requested and accepted by Mobile. On July 10, in anticipation of the foregoing events, Remmert was elected to the board of directors and was made president and general manager of the newly organized corporation (Custom). It was at this time that he began seeking work orders for Custom. None of the orders obtained by Remmert for Custom were to be completed before the cut off date of July 15.

Seven former employees of Mobile were hired by Custom in August after their employment had been terminated by Mobile. A bookkeeper and one other employee did begin work for Custom in the evenings prior to the time they were terminated by Mobile. These two employees "moonlighted" at Custom in the evenings while working for Mobile during the daytime. As a result of the efforts of Remmert the newly organized corporation became actively engaged in customizing motor vehicles in Parsons shortly after July 18, 1972. The older corporation, Mobile, ceased to do business and moved to Texas. It remained dormant after employment in Parsons was terminated on August 17, 1972.

Now let us review some of the basic rules of law applicable to the present appeal. This case was tried to the court. On appeal it is not the function of the appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact. The reviewing court is concerned only with the evidence which supports the trial court's findings and not with the evidence which might have supported contrary findings. (*Rymph v. Derby Oil Co.*, 211 Kan. 414, Syl. ¶ 3, 507 P. 2d 308.) When a case is tried to the court and the evidence is heard orally the district court's findings in the case have the force and effect of a jury's verdict and if supported by substantial evidence the findings will not be disturbed on appellate review. (*McAdam v. Fireman's Fund Insurance Co.*, 203 Kan. 123, Syl. ¶ 1, 452 P. 2d 851.)

The officers and directors of a corporation occupy a position of

trust, sometimes referred to as a fiduciary position, with respect to the corporation and its stockholders. (*Meinhard v. Salmon,* 249 N. Y. 458, 164 N. E. 545.) By reason of the position of trust which an officer or director holds the law will not permit him to manage the affairs of the corporation for personal or private advantage. The duty imposed by this position of trust requires an officer or director to work for the general interests of the corporation. (*Abbott v. Inland Oil Inc.,* 161 Kan. 316, 167 P.,2d 287.) It is generally recognized in the absence of an agreement not to compete that a director or officer on termination of his position with the company will not be precluded from entering into and engaging in a business enterprise independent from, though similar to, that conducted by the corporation itself, provided in doing so he acts in good faith and does not interfere with that business enjoyed by the corporation. (19 Am. Jur. 2d, Corporations, § 1282, p. 690.) At the time a director or officer is removed or resigns from the corporation his position of trust with the corporation is terminated. It is generally held in such case that even before termination he is entitled to make arrangements to compete, except he cannot properly make use of confidential information peculiar to the corporation's business and acquired therefrom. Thus, he may purchase or initiate a rival business before the end of his relationship as an officer or director and upon termination of his employment immediately compete. (*United Aircraft Corp. v. Boreen,* 413 F. 2d 694; *Spring Steels, Inc., Aplnt. v. Molloy.,* 400 Pa. 354, 162 A. 2d 370.) This is a country of free enterprise based upon competition. The essential inquiry on any charge of unfair competition is good faith. Good faith will insulate a former officer or director from liability unless it is shown the rival business was intentionally operated for the purpose and in such a way as to be unfair and detrimental to the former employer-corporation. (*Tovrea Land and Cattle Company v. Linsenmeyer,* 100 Ariz. 107, 412 P. 2d 47.)

Appellant, Mobile, contends the evidence established that Remmert interfered with the operations of Mobile by hiring its employees, using its property and interfering in the continued operations of the corporation.

The trial court made the following finding in this regard:

". . . [T]hat in conducting such activities, defendant Remmert, individually or as agent of defendant corporation, did not interfere with the remaining operations of plaintiff company by hiring plaintiffs' employees, using plaintiffs' property, or interfering in any other manner. The Court finds that

defendant Remmert in fact encouraged employees to stay in plaintiffs' employment to finish projects currently under construction. The Court finds that the only evidence of use of plaintiffs' equipment by defendants is a small temporary use of an air compressor and saw, the value of which cannot be ascertained by the Court from the evidence. The Court finds that there is no substantial evidence that defendants took possession of any of the buildings or property of plaintiffs or hindered plaintiffs in any way in the operation of their business."

The appellants next contend the evidence established that Remmert made false public statements about the plaintiff corporation for the purpose of causing it to lose existing business contracts. The trial court specifically found that no false public statements were made by Remmert.

The appellants contend the evidence established that Custom used advertising materials which were the exclusive property of appellants and subject to the protection of the law.

Generally it is recognized that copying or imitating circulars and advertisements is strong evidence of fraud and unfair competition, especially where the advertisement is calculated to deceive the public and to pass the goods off as those of another. (87 C. J. S., Trademarks, Etc., § 119, p. 402.) Where one manufactures a product similar to his former employer's product and sells such goods without distinguishing marks, using similar sales methods and advertisements in order to appropriate his good will, a charge of unfair competition has been sustained. (*Plastics Research v. Norman*, 243 Ark. 780, 422 S. W. 2d 121.)

The trial court found:

". . . [T]hat after commencing business, the defendants caused to be prepared and circulated in publications advertising materials similar to that of plaintiff corporation. The Court finds that the various advertising materials were not exclusively property of plaintiff corporation and were not of such a nature to be confidential information subject to protection by law; that because of its special nature, the advertising for all such equipment manufactured by different companies is very similar in nature and is published in the same news media and circulated to similar sources."

In the present case the charge made against Custom does not involve trademark or copyright material. Mobile had discontinued business in the area four months before the publication of the advertisements complained of and it has since remained dormant. The advertising used was of a standardized nature for that general type of business.

A charge of unfair advertising is not sustained when the com-

plaining company previously discontinued business in the area, when the advertisements are more or less standard for that type of business, when no trademark or copyright is involved and when said advertisements are not used to deceive the public or pass the goods off as those of another.

The appellants next contend that Remmert on behalf of Custom improperly solicited and took over orders and contracts from customers of Mobile. The trial court found:

". . . [T]hat sometime in the latter part of May or June of 1972, when the individual plaintiffs as directors of plaintiff corporation were considering moving to Texas or closing the plant operations due to continued losses, the defendant Remmert was instructed by them to accept no work that could not be produced by July 15th, and that they would make a definite decision at a later time with regard to future production. Plaintiffs then decided to complete nine units of production for the State of Alaska and these units were produced and completed by the middle of August, 1972; that all manufacturing operations of plaintiff corporation terminated at that time and there has been no manufacturing activity of plaintiff corporation since. The Court finds that because of the decision to terminate production by July 15th, or on completion of the Alaska units, that plaintiff corporation could not have produced the two units for the Cerebral Palsy Foundation which were contracted for and produced by defendant corporation.

"The Court finds that while defendant Remmert served as president and manager of plaintiff corporation, he had no written contract of employment and plaintiff corporation had the right to discharge him as manager or he had the right to resign at any time; that there was no provision prohibiting defendant Remmert, in case of his resignation, from setting up an independent business of the same character as that of plaintiffs or from soliciting customers of the plaintiffs for such business.

We have made a careful review of the record and there is substantial evidence to support each of the above findings of the trial court. It is apparent from the evidence that Remmert's purpose in initiating the new corporation was not to compete or to force Mobile to cease operations in Parsons, Kansas. Custom was initiated and organized as a backup corporation to begin business if and when Mobile terminated its business and ceased employing workers in Parsons. Termination of business operations in Parsons by Mobile was imminent when the new corporation was formed. Even after Remmert resigned he urged the employees of Mobile to remain at work and to complete existing orders. In the course of finishing the last existing orders of Mobile, employees of Custom assisted the employees of Mobile in solving technical difficulties they encountered. This was done with the knowledge and approval of Remmert.

When the customer list of a business is not confidential and the business is of such a nature as to rely on open competition to secure orders a former employee may solicit former customers of his employer without being guilty of unfair competition. (*Garst v. Scott,* 114 Kan. 676, 220 Pac. 277, 34 A. L. R. 395; 42 Am. Jur. 2d, Injunctions, § 112, p. 860.) It cannot be said in the present case that Remmert deprived Mobile of customers or orders. July 15, 1972, was the date which Mobile's directors set as the cut off date for its manufacturing operations in Parsons. The orders for the two units ordered by the Cerebral Palsy Foundation were not to be completed and delivered until after this cut off date. By setting the cut off date, July 15, 1972, Mobile in effect refused to accept these two Cerebral Palsy orders. Therefore, Custom did not deprive Mobile of such orders.

An officer or director is not chargeable with lack of good faith toward his corporation in regard to a contract previously held by it once the corporation has refused to renew or accept that contract. In such a case the officer or director is free to form a new company and secure a contract for the new company. (3 Fletcher, Cyclopedia of Corporations, § 856, p. 217; c. f. *Abbott Redmont Thinlite Corporation v. Redmont,* 475 F. 2d 85; *American Window Cleaning Co. of Springfield, Mass. v. Cohen,* 343 Mass. 195, 178 N. E. 2d 5.)

Under all the evidence it appears that Remmert acted in good faith in initiating and operating the new business. Custom was not organized as a rival business and was not actually and demonstrably the cause of Mobile's termination of business in Parsons.

Appellants argue that although Remmert resigned as president and manager of Mobile he remained a director and his actions constitute a breach of fiduciary duty owed as a director in that he failed to work for the general interests of the corporation.

After the Texas directors asked for and received the resignation of Remmert they held no further director's meetings. As late as September 11, 1972, Remmert tried to resign as director and wrote Mr. N. H. Conder, president of Mobile, stating that he "would like at this time to completely sever all relations with the company." No answer to the letter was forthcoming. Remmert was not consulted by the Texas directors after July 6, 1972, and they thereafter wound up the business of Mobile in the Parsons' plant without consulting him.

. It would appear that the Texas directors by their actions in

excluding Remmert from the decision making process of the corporation effectively terminated his position of trust with the company. It should be emphasized that no director's meetings were called after July 6, 1972. The corporation was insolvent at that time and remains so. After July 6, Remmert was a director in name only. The other directors who held title to all of the stock, except that owned by Remmert, excluded him from further participation as a director. Under such circumstances it cannot be said that Remmert violated a viable position of trust as a director of Mobile.

The findings of the trial court are supported by substantial evidence and the judgment is affirmed.