NOT DESIGNATED FOR PUBLICATION

No. 126,386

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
IRENA RRAPAJ,
*Appellee*,

and

LEONARD RRAPAJ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Oral argument held April 9, 2024. Opinion filed August 9, 2024. Affirmed.

*Todd A. Luckman*, of Stumbo Hanson, L.L.P., of Topeka, for appellant.

*Joseph W. Booth*, of Lenexa, for appellee.

Before BRUNS, P.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: Leonard Rrapaj appeals from the district court's order granting Irena Rrapaj's motion to enforce a separation and property settlement agreement. After litigating their divorce for several years, the parties engaged in settlement negotiations which culminated in the disputed separation agreement.

On appeal, Leonard argues that the district court lacked sufficient evidence to find that the separation agreement was valid, just, and equitable as required by K.S.A. 23-2712(a). He further contends that the agreement was never fully formed because there

1

was no meeting of the minds between the parties with respect to its essential terms. We have scrutinized the record and conclude the district court had sufficient evidence to find that the separation agreement was valid, just, and equitable. We are equally satisfied that the parties arrived at a meeting of the minds as to all essential terms covered by the agreement. Accordingly, the decision of the district court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Irena Rrapaj filed a petition for divorce from her husband, Leonard Rrapaj, after 30 years of marriage. In addition to a divorce decree, Irena sought an equitable division of the parties' property and debts, as well as spousal maintenance. Irena was awarded temporary maintenance in the amount of $7,363.

To help facilitate that equitable division, Irena filed a domestic relations affidavit (DRA) as required, which outlined the parties' income, liquid assets, expenses, personal property, and real property. Their income was primarily derived from Raven Development Company, LLC d/b/a Topeka Sports Cabaret, a strip club owned and operated by the parties. Profit and loss statements included within Irena's affidavit reported that in 2019, the net income of the club was $315,550.68. The parties also owned Raven 2, LLC, which essentially acted as the landlord for the club, its equipment, and the surrounding real estate. The affidavit also listed business interests in Leonia, Inc., a limousine service; and Leonia 2, LLC, a party bus service.

Leonard initially adhered to his obligation to pay support but once it waned and then stopped altogether Irena filed a Motion to Enforce the court's order. He claimed that his earnings plummeted after 2020 due to the effects of both the COVID-19 pandemic and the government's response to the same. Curiously, despite that meager income, the affidavit also included substantial assets including six automobiles, four business entities, and two parcels of real estate which included the martial residence, with a value of

2

$591,000, and the other which housed their business and a farmhouse, valued at $749,690.

Irena's motion was granted without a hearing and the court entered a judgment against Leonard for $60,719 in arrearages. The court went on to hold that if Leonard again neglected to pay the ordered support, it would appoint a special master to sell a select portion of the property from the martial estate to satisfy his support obligation.

Within a few short months, Leonard filed a motion seeking to modify the temporary support orders. As support, he highlighted Irena's percentage of interest in the parties' various businesses and provided the district court with the following financial documents:

- Raven 2, LLC 2020 Form 1065 Schedule K-1
- Leonia 2, LLC 2020 Form 1065 Schedule K-1
- Leonia, Inc. Form 1120-S Schedule K-1
- Raven Development LLC 2019 breakdown of net income
- Irena and Leonard's Form 1040s for 2015-2020
- Raven Development Company, LLC total revenue, income, and losses for 2015-2020
- Raven Development Company, LLC balance sheet as of June 30, 2021
- Irena and Leonard's temporary maintenance worksheets.

The district court conducted a hearing to resolve Leonard's motion and accepted testimony from experts called by both parties—Michael Swisher, CPA, for Leonard and Dr. Jeffrey Quirin for Irena. These experts spoke extensively on the parties' finances and the nature of their business interests. Swisher's testimony was a crucial complement to the financial exhibits submitted into evidence. Through his testimony, the court was afforded a view into the operation of the parties' businesses and learned that they

3

purchased the strip club, a cash driven business, for nearly one million dollars, and that while it provided a strong, steady source of income for the couple at one time, that allegedly tapered off immediately prior to COVID-19, ultimately coming to a halt with the arrival of the pandemic. According to Swisher, the business experienced only a marginal recovery in the years since. However, the balance sheet Leonard submitted for Raven Development Co., LLC, reflected that as of June 30, 2021, the business boasted $771,175.19 in retained earnings.

Dr. Jeffrey Quirin likewise testified at length concerning the parties' financial circumstances over a period of several years. He advised the court that the dismal picture painted by their tax returns stood in stark contrast to the luxurious lifestyle they managed to maintain, such that it "doesn't pass the sniff test." Quirin highlighted how, despite receiving but a trickle in income, the couple still purchased over three million dollars in businesses and other assets. A hard copy of his findings was entered as an exhibit for the district court's review. Quirin further informed the court that his research into the case revealed a fair measure of creative accounting in that the couple drew significant sums of money from the businesses as "loans" to shareholder accounts to avoid any personal income tax implications.

The hearing on Leonard's motion was continued and on November 5, 2021, Irena, by and through her counsel, sent a settlement offer letter to Leonard's counsel that would remain open for a period of 10 days. The terms reflected the following proposed property division:

- Real Estate: Irena would receive the Olathe property while Leonard would receive the property owned by Raven 2.
- Businesses: Leonard would receive all of the business interests in the strip club, party bus, and limousine businesses, along with the liabilities associated with those assets.

4

- Automobiles: Irena would receive the 2004 Mercedes and 2012 Yukon Denali, while Leonard would receive the rest of the vehicles.
- Cash Payment: Leonard would pay Irena a total of $770,000. A down payment of $300,000 would be made on the day the decree of divorce is filed and $20,000 would be paid on the day the separation agreement is executed to assist with their disabled adult son's expenses. The balance of $450,000 would be paid over five years, with interest at a rate of 5% compounded annually.
- Spousal Maintenance: Leonard would pay Irena $5,000 per month for 10 years until either party dies, she remarries, or she cohabitates in a marriage-like relationship.
- To secure payments due under the above terms, Leonard would maintain life insurance of at least $500,000 for 10 years, with Irena named as the sole beneficiary.

In August 2022, the district court granted a motion for attorney fees that Irena filed the preceding year and ordered Leonard to pay $50,000 toward her legal costs. That same month, Leonard's counsel sent a letter to Irena's counsel accepting the "withdrawn" November 5, 2021 settlement offer with "minor changes necessary for implementation." Leonard requested a reduction in the cash payment to reflect the fact that he covered Irena's portion of the special master's fees, as well as a nullification of the $50,000 in legal fees that the district court previously awarded. Irena's counsel sent a letter to Leonard's counsel accepting these changes on August 23, 2022. A formal written instrument was then drafted to memorialize the terms reached through their correspondence.

One month later, Irena's counsel sent the Separation and Property Settlement Agreement to Leonard's counsel. Later that day, Leonard's counsel requested additional terms stating that the parties would pay their own expert witness fees and language clarifying that the district court's order requiring Leonard to pay Irena's legal fees would

5

be null and void. Irena's counsel inquired whether Leonard's counsel would be redlining the draft agreement to effectuate the requested changed.

Four days later, Leonard's counsel responded with a rejection of the draft agreement, as well as the November 5, 2021 terms for three reasons. First, the agreement failed to specify that the district court's order requiring Leonard to pay Irena's legal fees would be null and void. Second, it contemplated commencement of maintenance payments "less than 10 days" later. Finally, it required maintenance payments for 10 years without consideration for the temporary maintenance payments Leonard already submitted.

Irena responded by moving to enforce the settlement agreement. She argued that the parties' correspondence in August 2022 included a written offer and acceptance sufficient to create an enforceable agreement, despite Leonard's subsequent rejection of the draft agreement. In his response to Irena's motion, Leonard argued that the parties did not form a binding contract because there was no meeting of the minds with respect to all essential terms. Rather, they simply engaged in a series of offers and counteroffers. Irena replied and maintained her position, buttressed by legal authority, that a binding agreement was reached as to all essential terms, including amount of maintenance, term of maintenance, termination of maintenance, division of net worth, specifically terms of payment and collateral, and attorney fees.

The court held a hearing to resolve the motion at which time Leonard's counsel raised the additional concern about his client's ability to honor his obligations under the disputed settlement agreement and the one-sidedness of certain provisions. His counsel also stated, in reference to Leonard's finances, that "we have continually had our accountants with us every time we've been here to tell the court what was happening." At the end of the hearing, the district court took the matter under advisement to review the parties' various communications.

6

The district court ultimately granted Irena's motion to enforce the settlement agreement and entered a decree of divorce. It found that Irena's November 5, 2021 offer was accepted by Leonard through subsequent correspondence and enforced the parties' agreement based on those terms.

Leonard now brings his case before this court for a determination of whether (1) the district court had sufficient evidence to properly scrutinize the settlement agreement, and (2) the settlement agreement was formed by a meeting of the minds as to all essential terms.

LEGAL ANALYSIS

*The district court had sufficient evidence from which it could reasonably conclude that the parties' settlement agreement was valid, just, and equitable.*

Leonard's first argument on appeal is that the district court failed to properly scrutinize the settlement agreement for validity, justness, and equitability, as required by K.S.A. 23-2712(a). Irena counters that Leonard neglected to properly preserve the issue for appeal and, even if he had, there was plenty of evidence available to the district court to enable it to arrive at its conclusion.

*Standard of Review*

Appellate courts review a district court's finding under K.S.A. 23-2712(a) that a separation agreement is "valid, just, and equitable" for an abuse of discretion. *In re Marriage of Traster*, 301 Kan. 88, 108-09, 339 P.3d 778 (2014).

7

*Leonard Preserved This Argument for Appeal*

Generally, issues not raised before the district court cannot be raised on appeal. *State v. Keys*, 315 Kan. 690, 696, 510 P.3d 706 (2022). To satisfy the preservation rule, a party must either provide a "pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" in the district court, or "[i]f the issue was not raised below, there must be an explanation why the issue is properly before the court." See Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). A party who ignores this requirement is considered to have waived and abandoned any exception to the preservation rule. See *State v. Meredith*, 306 Kan. 906, 909, 399 P.3d 859 (2017).

Leonard does not dispute that he is raising this issue for the first time on appeal. Rather, he asserts that K.S.A. 2023 Supp. 60-252(a)(4) and *In re Marriage of Bradley*, 258 Kan. 39, 899 P.2d 471 (1995), allow him the latitude to do so.

K.S.A. 2023 Supp. 60-252(a) requires a district court to make specific factual findings and conclusions of law when entering a judgment in an action tried on the facts without a jury. Subsection (b) of that statute allows a party to make a timely motion after the entry of judgment asking the court to amend or make additional findings. K.S.A. 2023 Supp. 60-252(b). When an appellant fails to object in the district court to allegedly inadequate findings "in order to allow the trial court the opportunity to correct any omissions," typically that appellant "is precluded from challenging the allegedly deficient findings on appeal." *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 703, 229 P.3d 1187 (2010).

Kansas courts have also repeatedly held that an objection to alleged inadequacies in a district court's findings is generally required for preservation of issues sought to be appealed. See *Hooks v. State*, 51 Kan. App. 2d 527, 529, 349 P.3d 476 (2015) ("The district court has the primary duty to provide adequate findings of fact and conclusions of

law on the record of its decision on contested matters" but parties "must object to inadequate findings of fact and conclusions of law to preserve an issue for appeal."). But see *Ponds v. State*, 56 Kan. App. 2d 743, 756, 437 P.3d 85 (2019) (holding that because the record did not preclude meaningful appellate review, the failure to object in district court to the adequacy of the findings meant this court would presume the district court made all necessary findings to support its legal conclusions).

Yet, K.S.A. 2023 Supp. 60-252(a)(4) states that "[a] party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them or moved for judgment on partial findings." In *Bradley*, the Kansas Supreme Court clarified whether a party is required to object to the trial court's findings under section 60-252 to preserve a right to appellate review and said:

> "In all actions under K.S.A. 60-252 and Rule 165, when the trial court has made findings, it is not necessary to object to such findings to question the sufficiency of the evidence on appeal. However, if the findings are objectionable on grounds other than sufficiency of the evidence, an objection at the trial court level is required to preserve the issue for appeal." 258 Kan. at 50.

Considering K.S.A. 2023 Supp. 60-252(a)(4) and *Bradley*, it appears an appellant may raise sufficiency of the evidence for the first time on appeal. Those authorities explicitly designate sufficiency of the evidence as an issue that does not require an objection at the trial court level to preserve the issue for appeal. See also *In re Matter of Marriage of Poggi*, No. 121,012, 2020 WL 5268841, at *3 (Kan. App. 2020) (unpublished opinion).

Irena further argues that Leonard waived this argument by failing to file a motion seeking more specific findings under K.S.A. 2023 Supp. 60-252(b). She claims the same is required in order to "give[] the trial court an opportunity to correct findings or

9

conclusions that are argued to be inadequate." *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). But none of the authorities she relies on in support of that contention stand for the proposition that a 60-252(b) motion must be filed with the district court to preserve sufficiency of the evidence for appeal. Rather, those appellants either sought to challenge a district court's failure to make a requested finding or its reliance on perceived factual inaccuracies in arriving at its decision. See *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 941, 381 P.3d 490 (2016) (appellant needed to object to the district court's failure to rule on her motion for attorney fees before raising the issue on appeal); *In re Marriage of Sandhu*, 41 Kan. App. 2d 975, 979-80, 207 P.3d 1067 (2009) (appellant needed to object to district court's finding that her income exceeded the threshold for receiving spousal maintenance before arguing on appeal that she was entitled to support).

Accordingly, we find Leonard's question of whether the district court lacked sufficient evidence to find that the separation agreement was valid, just, and equitable is properly before us for review by operation of K.S.A. 2023 Supp. 60-252(a)(4).

*The district court had sufficient evidence to properly scrutinize the separation agreement.*

Before a district court can approve a separation agreement, it is required by statute to first determine whether the agreement is valid, just, and equitable. K.S.A. 23-2712(a). When conducting such an independent inquiry into the fairness of any separation agreement, this court has emphasized the need for sufficient evidence in the record to support the district court's evaluation. *In re Marriage of Kirk*, 24 Kan. App. 2d 31, Syl. ¶ 1, 941 P.2d 385 (1997). Focusing in on that standard, Leonard implores us to find that the district court lacked sufficient evidence to make that preliminary determination.

When a separation agreement is submitted for court approval, the trial judge is given broad discretion to determine its fairness and equitability. While district courts are vested with broad discretion in adjusting property rights during a divorce, failure to

scrutinize a separation agreement before approving it is inconsistent with the limitations of judicial discretion. Thus, we review the issue for an assessment of whether any abuse of that discretion occurred in arriving at its decision. If reasonable people could disagree about the appropriateness of the trial court's conclusion, then no abuse of discretion has occurred. *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 406, 166 P.3d 440 (2007).

K.S.A. 23-2712(a) states, "If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated into the decree." Prior to 2011, this statute was codified as K.S.A. 60-1610(b)(3). Given the mandate of this statute and its predecessors, "separation agreements have always been subject to the scrutiny of the courts to prevent fraud and oppression." *Spaulding v. Spaulding*, 221 Kan. 574, 577, 561 P.2d 420 (1977).

In *Kirk*, the required domestic relations affidavits, which were purportedly filed in the district court, were not included in the record on appeal. Additionally, there was no evidence which established the valuation of the husband's and wife's separate businesses, nor did the separation and property settlement agreements contain any information concerning property values.

On appeal, a panel of this court determined that the district court abused its discretion by finding that the separation agreement was just and equitable given that lack of key evidence. *Kirk*, 24 Kan. App. 2d at 35-36. The importance of property values in scrutinizing a separation agreement is emphasized in 1 Elrod, Kansas Family Law Handbook § 11.074D (rev. ed. 1990), which recommends that property values for each major piece of property, e.g., realty, automobiles, etc., and their intended recipient be set forth in the separation agreement. According to the Handbook, a district court simply cannot properly determine what is just and equitable without knowledge of property value.

11

This theme concerning the importance of property values is also reflected in Kansas Supreme Court Rule 139 (2024 Kan. S. Ct. R. at 220). Rule 139 mandates the filing of a DRA in divorce, annulment, and separate maintenance cases. The rule also requires that a DRA must accompany any requests for support orders and provides that "[a]n ex parte support order may not be issued in the absence of an accompanying domestic relations affidavit." Rule 139(d) (2024 Kan. S. Ct. R. at 220). The prescribed DRA form includes sections which detail the parties' liquid assets, real property, and all other personal property with actual or estimated value included. See *In re Estate of Loughmiller*, 229 Kan. 584, 591, 629 P.2d 156 (1981).

*Takusagawa* offers another case example of a challenge lodged against the reasonability of the district court's approval of a separation agreement. Where the record reflected that each party filed a DRA which outlined their respective incomes alongside property valuations and one party filed a statement for a proposed division of property accompanied by values of each item, the district court had before it all the materials required by *Kirk*. Thus, the decision of the district court was affirmed. 38 Kan. App. 2d at 406-07.

Using *Kirk* and *Takusagawa* as a backdrop, we find the district court in this case had the benefit of a plethora of evidence from which it could properly gauge the parties' financial situation. Specifically, it had their respective DRAs, expert testimony, temporary maintenance worksheets, and individual tax returns, which provided broad evaluations of their joint and separate properties, assets, and liabilities. The court was also afforded the opportunity to review tax returns and balance sheets for their businesses, as well as evidence of the significant real estate and business acquisitions they made during the marriage. The authorities Leonard cites in support of his position speak to a near total absence of information concerning valuation, and that is not this case. Accordingly, we find that Leonard has failed to carry his burden to demonstrate that

the district court lacked the requisite evidence to reasonably conclude that the agreement was valid, just, and equitable.

*The separation agreement reflects the parties arrived at a meeting of the minds with respect to all its essential terms.*

In his next claim of error, Leonard contends the district court erred in finding that the terms outlined in the offer letter sent by Irena's counsel on November 5, 2021, were accepted by Leonard via letter on August 12, 2022. He asserts that the parties were not in agreement with respect to all essential terms when his counsel sent the letter accepting Irena's offer. Rather, his argument goes, the parties contemplated additional terms, including the "payment of certain obligations and resolution of the turnover of [Leonard's] personal property." According to Leonard, these additional terms were absent from Irena's offer letter and were to be established by a formal, written agreement.

*Standard of Review*

Appellate courts exercise unlimited review over the interpretation and legal effect of written instruments. Thus, we are not bound by the district court's interpretation of the agreement at issue. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016). Yet, "[t]he determination of the existence of a sufficient meeting of the minds to form the basis for a binding contract is one of fact to be determined by the trier of the facts." *Care Display, Inc. v. Didde-Glaser, Inc.*, 225 Kan. 232, Syl. ¶ 3, 589 P.2d 599 (1979). Importantly, "[t]he law favors the compromise and settlement of disputes and when parties enter into an agreement settling and adjusting a dispute neither party is permitted to repudiate it in the absence of fraud, bad faith or mutual mistake of fact. [Citations omitted.]" *Rymph v. Derby Oil Co.*, 211 Kan. 414, 418, 507 P.2d 308 (1973).

*There Was a Meeting of the Minds to All Essential Terms*

"In order for parties to form a binding contract, there must be a meeting of the minds as to all essential terms thereof." *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 488, 15 P.3d 338 (2000). "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." *Steele v. Harrison*, 220 Kan. 422, Syl. ¶ 3, 552 P.2d 957 (1976). "Any expression of assent that changes the terms of the offer in any material respect may be operative as a counteroffer, but it is not an acceptance and constitutes no contract." 220 Kan. 422, Syl. ¶ 4. Essential terms include

> "'identification of the subject matter, the price to be paid, the time of performance, or the work to be done. Missing terms such as price, or the time of delivery or completion, will be supplied where possible by an inference that a reasonable price, or delivery at a reasonable time was intended. However, such an inference is not possible where the offer or agreement attempts to cover these terms and fails to achieve intelligible certainty.'" PIK Civ. 4th 124.04, Comment (quoting Simpson, Handbook on the Law of Contracts [2d ed.] p. 19).

K.S.A. 23-2802(a) states that the decree dividing marital property shall

> "divide the real and personal property of the parties, including any retirement and pension plans, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts, by: (1) A division of the property in kind; (2) awarding the property or part of the property to one of the spouses and requiring the other to pay a just and proper sum; or (3) ordering a sale of the property, under conditions prescribed by the court, and dividing the proceeds of the sale."

Irena's offer letter addressed the division of the parties' real estate, business interests, and automobiles. It further referenced a significant cash payment to be made by

14

Leonard, as well as spousal maintenance, which would be secured by a life insurance policy. A review of the letter Leonard sent on August 12, 2022, bears out that he accepted Irena's "withdrawn offer" and also simply sought "to clarify the minor changes necessary for implementation." Those "minor changes" included: (1) a deduction in the amount of the cash payment to reflect Leonard's funding of the special master, and (2) nullification of the court order requiring Leonard to pay Irena's attorney fees. Irena's counsel sent a letter to Leonard's counsel accepting these minor changes on August 23, 2022.

We are satisfied that the parties' correspondence in August 2022 resulted in a meeting of the minds on all essential terms necessary to form a property separation agreement. Irena's November offer letter proposed a division of the parties' real and personal property, as required for a divorce decree under K.S.A. 23-2802(a). Leonard's August 12, 2022 letter reflected an unequivocal acceptance of that offer. To the extent his desire to clarify "minor changes" could be considered a counteroffer, that request was accepted by Irena through her letter on August 23, 2022.

All the terms imposed by the court order granting Irena's motion to enforce were agreed to by the parties. We decline to find that the return of Leonard's personal property constituted an essential term. But even if it fell in that category the record reflects that the parties advised the district court that they previously agreed on the personal property that he would take possession of when the divorce was finalized. Thus, there was also a meeting of the minds as to this term.

Finally, Leonard's brief claims that there was no meeting of the minds as to the "payment of certain obligations." This vague interpretation of the settlement negotiations finds no support in the record. Our request for clarification at oral argument as to what was intended by this phrase or what details remained outstanding failed to yield any illuminating information.

The record before us sufficiently demonstrates that the parties arrived at a meeting of the minds with respect to all essential terms set forth in the agreement. Accordingly, the decision of the district court is upheld.

*Appellate Attorney Fees*

On April 22, 2024, Irena timely moved this court to award appellate attorney fees pursuant to Kansas Supreme Court Rule 7.07(b) (2024 Kan. S. Ct. R. at 52). Leonard did not respond to her motion.

Kansas courts cannot award appellate attorney fees unless a statute authorizes the award or there is an agreement between the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013); see Supreme Court Rule 7.07(b)(1). Whether a court has the authority to award attorney fees is a question of law over which an appellate court has unlimited review. 297 Kan. at 162. Here, the district court had the authority to award attorney fees under K.S.A. 23-2715, which permits courts to award fees in divorce proceedings. K.S.A. 23-2715 ("Costs and attorney fees may be awarded to either party as justice and equity require.").

Irena has diligently pursued courses of action in this matter that were designed to bring this litigation to a close in a fair and timely manner only to be met with conflict by Leonard that often was seemingly unnecessary. The position that she advocated for, and which was properly and reasonably granted by the district court, has now been affirmed on appeal. This case is one in which the district court had authority to award attorney fees, and Irena's motion complies with the requirements for such motions under Rule 7.07(b)(2). Accordingly, we find it is reasonable to grant her request for attorney fees.

Affirmed.